Nathan Borin, For Use of Joseph Novy, Appellant, v. John Hancock Mutual Life Insurance Co., Lincoln National Life Insurance Co., Mutual Life Insurance Co. of New York, Garnishee-Appellees. Sol Borin, Intervenor-Appellee.

**Gen. No. 47,610.**

First District, Second Division.
April 14, 1959.
Released for publication May 5, 1959.

139

DeWolfe and DeWolfe, of Chicago (John C. DeWolfe and John C. DeWolfe, Jr., of counsel) for plaintiff-appellant.

Simon Herr, of Chicago, for intervenor and certain-appellee.

JUSTICE KILEY delivered the opinion of the court.

This is a garnishment proceeding to recover insurance premiums paid by Nathan Borin to three insurance companies while he was insolvent. His brother Sol, assignee of the policies, intervened. The trial court sustained the Intervenor's complaint and discharged the garnishees. Plaintiff, Novy, has appealed.

On February 10, 1950, Novy confessed judgment against Nathan Borin for the amount of $12,157.50 on the latter's notes. Execution issued on February 14, 1950, and was returned unsatisfied. Borin paid $300 on account on April 22, 1950, paid nothing thereafter, and in a deposition dated August 30, 1950, stated he had three $25,000 life insurance policies, held by garnishees herein, which had not been assigned or pledged. From February 2, 1949, to November 3, 1951, Borin paid premiums of $8094.26 on the policies. He then executed an assignment of the policies to his brother Sol, Intervenor, for $1250. During the period that he paid premiums he was insolvent. After the assignment and until Nathan Borin died on March 24, 1956, Intervenor paid premiums of $3817.50 to garnishee Lincoln, $2474.49 to Mutual, and $3396.04 to John Hancock. He received premium loans of $2070.33 from Lincoln during this same period.

On April 23, 1956, Novy started this garnishment proceeding. The garnishees answered that the proceeds of the policies were: John Hancock—$18,773.33, Lincoln—$17,338.88, and Mutual—$16,492.36. They also answered that the U. S. Treasury, on May 3, 1956, sent them levies and Final Demands claiming unpaid income tax owed by Borin, in the amount of $304,630.08.

On September 21, 1956, Intervenor filed his complaint in the garnishment action alleging that the three

141

insurance policies were his, and that he was entitled to the proceeds, subject to any indebtedness due the U. S. on the tax liens. Novy answered and evidence was heard on the issue presented by the garnishment proceedings and subsequent pleadings.

The trial court found that Intervenor was entitled to the proceeds of the policies as assignee for consideration, and that the garnishees should deliver the proceeds to him upon receiving release of the federal tax liens. The garnishees were discharged.

█ There is no merit to Intervenor's claim that the trial court, sitting in a garnishment action, has no jurisdiction over such equitable issues as fraud and an equitable lien claimed by Novy because of his creditor's bill against Borin, September 7, 1951. Courts sitting in garnishment proceedings have express broad equitable powers from Ch. 62, Sec. 24, Ill. Rev. Stat. 1955 (Garnishment Act). None of the cases cited by Intervenor to uphold his contention were garnishment actions.

█ Novy argues that the assignment of the policies to Intervenor was fraudulent and without adequate consideration. The trial court found that the transaction was valid, and we think this finding is not contrary to the manifest weight of evidence. The trial court was justified, on the evidence submitted, in inferring that Intervenor had no such knowledge of the equitable lien, assuming without deciding that one was created by the creditor's bill, to make him guilty of intent to commit fraud.

█ As to the question of adequacy of consideration, Intervenor paid $1250 for the policies. Novy claims that this amount is grossly inadequate in the light of the large proceeds received by Intervenor upon his brother's death. This claim is without merit, however, since in determining adequacy we are to look only at cash surrender value at the time of assignment,

not the total proceeds payable at Nathan Borin's death, a date which Intervenor might never have lived to see.

■ Due to rather heavy borrowing by Nathan Borin on his policies, the face cash surrender value was greatly diminished. The record shows that the value, considering the loans, at the time of assignment, was not more than $25 greater than the price paid for the assignment. This discrepancy will not support a claim of inadequate consideration.

Novy contends that he is entitled to recover the premiums paid by Borin between February 2, 1949, and November 3, 1951, as paid in fraud of creditors.

It is a general rule of law that premium payments made by an insured who is insolvent are recoverable by creditors, C. J. S. Fraudulent Conveyances Sec. 19(b). This is true whether actual fraud be shown or not, all that is normally required being a mere showing that there was a diversion of property from creditors during insolvency, 19 U. of Chi. L. R. 106, 109. This conclusive presumption of intent to defraud is limited, in many states where "exemption" statutes are in effect, to allow "moderate" (see Ross v. Minnesota Mut. Life Ins. Co., 154 Minn. 186, 191 N. W. 428) premium payments to be made despite the insured's insolvency where the beneficiaries are dependents who should be protected by insurance proceeds payable upon his death, Central Nat. Bank v. Hume, 128 U. S. 195. Where such an exemption statute exists to protect dependents some courts will require a showing of actual fraud instead of conclusively presuming fraud, Doethlaff v. Penn. Mut. Life Ins. Co., 117 F.2d 582. The courts of Illinois are not among these.

■ In Illinois, even where dependents are the beneficiaries, the payment of premiums while insolvent leads to a "presumption of fraudulent intent (which) is irrebuttable and conclusive, and inquiry into the mo-

tives is inadmissible," Ramsey v. Nichols, 73 Ill. App. 643, 650. Such payment "is regarded as fraudulent in law without reference to the motive or actual intention of the party making the conveyance or transfer," Houston v. Maddux, 179 Ill. 377, 385. In Cole v. Marple, 98 Ill. 58, recovery of premiums paid while insolvent was allowed without any showing of actual fraud. While these cases came under the Exemption Act of 1869, the wording of that Act in regard to premium payments made in fraud of creditors is substantially the same as that used in the present Section 850 of the Insurance Code, our current exemption law. The Cole, Houston and Ramsey cases are good authority for Novy's contention under the present code.

■ Since the Illinois courts will presume fraud even where dependents are concerned, *a fortiori* they will presume fraud where dependents are not the bene-ficiaries. We hold that the premiums paid by Nathan Borin during insolvency were voluntary gifts presumptively fraudulent as hindering and delaying his creditors, and that the trial court should have ruled as a matter of law that Novy was entitled to recover those premiums. It follows that the order must be reversed.

■ ■ Some courts will allow the creditor to recover the premiums only from the cash surrender value of the policy, In re Goodchild, 10 Fed. Supp. 491, while other courts will allow recovery out of the total proceeds received due to the death of the insured, Doethlaff v. Penn. Mut. Life Ins. Co., 117 F.2d 582. The theory of the court in the latter case was that cash surrender value had no real existence until the policy was actually surrendered, and since the creditors could not force the insured to surrender the policy there were no "proceeds" until the insured died. Thus the court allowed recovery out of the total amount received due to the death of the insured. In our case, however, the

insured sold the policy, in a valid transaction, before he died. It is true that he did not "surrender" it to the insurance company, but, as far as his control over the policy was concerned, his disposition of it was as effective as if he had done so. We are therefore of the opinion that the plaintiff is entitled to have his recovery of the premiums paid during 1949–1951 out of a sum equal to the cash surrender value of the policies as of November 3, 1951, the date of transfer by the insured. Intervenor is liable for this amount because he took the assignment from his brother subject to any equities or defenses existing between Nathan and his creditors, Angelina County Lumber Co. v. Michigan Cent. R. Co., 252 Ill. App. 82, C. J. S. Assignments, sec. 114.

■ Finally, there is a question here as to whether a federal tax lien exists against the proceeds of the policies. If such a lien does exist it takes precedence over the lien of the judgment creditor (Comm. v. Stern, 357 U. S. 39, Comm. v. Bess, 357 U. S. 51). Novy has argued both in his briefs and upon oral argument that the federal lien has been released by a settlement effected by Intervenor's attorney. The record is silent on the question of actual release and we cannot say that a U. S. tax lien does not exist here. The trial court must conduct further hearings on this point.

We conclude, therefore, that Novy is entitled to have the cash surrender value, as of November 3, 1951, applied to the payment of an amount equal to that paid in premiums by Nathan Borin between February 2, 1949, and November 3, 1951, plus interest from the dates of payments. He may not be paid any amount beyond the cash surrender value of the policies, which were lawfully assigned to Sol Borin. Novy's recovery is subject to whatever federal tax liens may exist.

The order discharging the garnishees is reversed and the cause is remanded to the trial court for further

proceedings to determine the amount of the cash surrender value of the three policies as of November 3, to determine whether there is a federal tax lien in existence superior to the lien of the plaintiff and to enter an order, thereafter, consistent with this opinion.

Reversed in part and remanded with directions.

LEWE, P. J. and MURPHY, J., concur.