**In re SEVKO, INC., Debtor.**

**Bankruptcy No. 90 B 12478.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 30, 1992.

Salvatore A. Barbatano, David W. Criswell, Rudnick & Wolfe, Chicago, Ill., for debtor Sevko, Inc.

Margaret M. Anderson, Lord Bissell & Brook, Chicago, Ill., for Mfrs. Nat. Bank and Affiliated Nat. Bank.

Thomas S. Kiriasko, Jerome N. Krulewitch, Mayer Brown & Platt, Chicago, Ill.

Ronald L. Rose, Dykema Gossett, Detroit, Mich.

John D. Lien, Foley & Lardner, Chicago, Ill.

Charles E. Gerber, Neal Gerber & Eisenberg, Chicago, Ill.

Richard Friedman, Office of the U.S. Trustee, Chicago, Ill.

John Collen, Marc Levenstein, Sonnenschein Nath & Rosenthal, Chicago, Ill., for claimant David Sabin.

James E. Carmel, Carmel Baker & Marcus, Chicago, Ill., for Creditors Committee.

Michael Reed, McCreary Veselka Bragg & Allen, Austin, Tex.

Jan R. Newsome, Gen. Counsel, Larry Potter, Blue Cross & Blue Shield of Tex., Richardson, Tex., for Blue Cross and Blue Shield of Texas, Inc.

Clifford E. Yuknis, Cheryl D. Chamberlain, Shefsky & Froelich Ltd., Chicago, Ill., for Ullman–Briggs.

## MEMORANDUM OPINION ON DEBTOR'S MOTION TO DISMISS AMENDED PROOF OF CLAIM OF ULLMAN–BRIGGS, INC. AND STAY DISCOVERY

JACK B. SCHMETTERER, Bankruptcy Judge.

The Debtor, Sevko, Inc. ("Sevko") moved to dismiss the amended proof of claim filed by Ullman–Briggs, Inc. ("Ullman–Briggs") pursuant to Fed.R.Bankr.P. 9014 and 7012(b), (Fed.R.Civ.P. 12(B)(6)), and to stay discovery related to that claim. The parties submitted memoranda and exhibits in support of their positions. After considering submissions of counsel, the Court denied Sevko's motions by an order entered March 11, 1992. This Memorandum Opinion gives the reasons for that ruling.

### FACTUAL BACKGROUND

#### The Amended Proof of Claim

A brief summary of the facts alleged by Ullman–Briggs is given to supply the background for analysis of Sevko's motion to dismiss:

Deerfield Housewares, Inc., formerly known as Salton, Inc. ("Old Salton"), is a corporation organized under the laws of New York. The sole shareholder of Old Salton is Sevko, which is a corporation organized under the laws of Illinois. The principal place of business for both entities is Deerfield, Illinois. Ullman–Briggs is a corporation organized under the laws of New Jersey, and its principal place of business is New York City, New York.

In 1985, Ullman–Briggs and Old Salton entered into an agreement whereby Ullman–Briggs was appointed as the exclusive sales representative for Old Salton, subject to various terms and conditions set forth therein. Old Salton allegedly terminated this agreement without cause approximately seven weeks later. In December of 1987, Ullman–Briggs filed suit against Old Salton for breach of contract in the United States District Court for the Southern District of New York. On February 26, 1991, judgment was entered against Old Salton, awarding Ullman–Briggs $645,641.33 plus statutory interest.

On September 19, 1988, Old Salton entered into an Asset Purchase Agreement with Salton Housewares, Inc. ("New Salton") and Sevko in which New Salton purchased all of Old Salton's assets except for its accounts receivables for a purchase price of $3,671,461. Ullman–Briggs alleges that, pursuant to this agreement, New Salton paid $900,000 of the purchase price to Sevko rather than to Old Salton. This payment purportedly served as consideration for a non-competition agreement between Sevko and New Salton, and for sale of equipment owned by Sevko and used in production of Old Salton's products. The Asset Purchase Agreement and the $900,-000 payment to Sevko form the basis for Ullman–Briggs' amended proof of claim.

On July 10, 1990, Sevko filed its petition for relief under Chapter 11 of the Bankruptcy Code. Ullman–Briggs filed its three-count amended proof of claim on January 17, 1992, which seeks damages against Sevko in the amount of the judgment plus statutory interest on all counts.

Count I of the claim alleges a violation of § 106(a) of the Illinois Uniform Fraudulent Transfer Act.[1] Ullman–Briggs claims that the transfer of assets from Old Salton to New Salton was a fraudulent conveyance because Old Salton received inadequate consideration for the transfer and was rendered insolvent by it. Ullman–Briggs further claims that the payment from New Salton to Sevko for the non-competition agreement was fraudulent because Sevko was not engaged in any business which would compete with New Salton.

Count II alleges a violation of § 105(a) of the Illinois Uniform Fraudulent Transfer Act.[2] Ullman–Briggs claims that Sevko caused Old Salton to sell its assets in order to defraud Ullman–Briggs or to render Old Salton insolvent. In Count III, Ullman–Briggs repeats the allegations made in Counts I and II but claims that Sevko violated §§ 273 through 276 of the New York Debtor and Creditor Law (New

---

1. Section 106(a) provides:

   A transfer made or obligation incurred [by a debtor] is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation. Ill.Rev.Stat. ch. 59, § 106(a).

2. Section 105(a) provides:

   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation:
   (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
   (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
   (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
   (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
   Ill.Rev.Stat. ch. 59, § 105(a).

York's version of the Uniform Fraudulent Conveyance Act).[3]

### Confirmation of Sevko's Plan

On September 5, 1991, the Court commenced the confirmation hearing on Sevko's Third Amended Plan of Reorganization. At the hearing, Ullman–Briggs objected to the plan because it subordinated a debt owed to Old Salton below all other debts, thereby eliminating an asset which Ullman–Briggs could look to in order to collect on its judgment, arguing:

> Debtor listed Salton, Inc. as an unsecured creditor in the amount of $3,010,443.69. Ullman as a judgment creditor of Salton, Inc. should be entitled to garnish a portion of that debt to Salton, Inc. in an amount equal to Ullman's judgment—$645,641.43 plus statutory interest. However, the Debtor alleges in its Third Amended Disclosure Statement (at page 26) that the 'Class 11 claims shall receive no distribution under the Plan and shall be discharged in full upon confirmation.' If the Plan is thus confirmed, the result will be inequitable as against Ullman, because the Debtor and Salton, Inc.—entities controlled by the same principles—will have extinguished a valuable property right of Salton, Inc. to which Ullman's judgment should attach.

Objection of Ullman–Briggs to Confirmation, at ¶ 12. On September 16, the Court overruled this objection stating,

3. New York law provides:

   **Section 273** Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

   **Section 273–a** Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

   **Section 274** Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remain-

Ullman is not harmed [under the Plan or Bankruptcy law] by that subordination because any asset of [Old Salton] that could conceivably be received out of this bankruptcy is licensed on by perfected security agreement in favor of Comerica.

See Transcript of September 16, 1991 Proceedings at p. 145. In other words, in that context, the objection was moot.

Ullman–Briggs also objected because Sevko never notified it of the bar date on claims, and its judgment against Old Salton did not become final until after the bar date. The Court also overruled this objection stating, "Ullman–Briggs is not prejudiced in any way by the plan because ... if their claim is allowed, there is an effective sweetening of the pot available to pay them their 15 percent." Transcript of September 20, 1991 Proceedings at p. 67. The "sweetening of the pot" is a reference to the addition of new assets to back the plan under which all unsecured creditors are to receive 15% of allowed claims. Consequently, the Court entered a Confirmation Order on September 20, 1991. Ullman–Briggs later filed its Amended Proof of Claim.

### DISCUSSION

#### Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred here

ing in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

   **Section 275** Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent both as to present and future creditors.

   **Section 276** Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

   N.Y. Debtor and Creditor Law §§ 273–276 (McKinney 1990).

under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### Standards on Rule 12(b)(6) Motions to Dismiss

In order for defendants to prevail on their motion to dismiss, it must appear beyond a doubt from the pleadings that the plaintiff can prove no set of facts in support of its claims which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court must consider both pleaded facts and reasonable inferences drawn from pleaded facts, in a light most favorable to the plaintiff when reviewing the defendants' motions to dismiss. *Gorski v. Troy*, 929 F.2d at 1186; *Corcoran v. Chicago Park District*, 875 F.2d 609 (7th Cir.1989); *Ross v. Creighton University*, 740 F.Supp. 1319, 1326 (N.D.Ill.1990).

Fed.R.Civ.P. 12(b) provides that, if matters outside the pleadings are presented on a motion to dismiss under Rule 12(b)(6), and those matters are not excluded by the court, then "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). *See also, Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *RJR Services, Inc. v. Aetna Casualty & Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989). Sevko's motion to dismiss refers to documents and events which are extraneous to the claim in an effort to show that Ullman–Briggs' claim is moot and barred by collateral estoppel. Both parties have submitted such exhibits to support their arguments as if dealing with a motion for summary judgment. While those documents were not formally supported as required under Fed.R.Civ.P. 56 nor formally offered under procedures of Local District Rule 12, they were all filings on transcripts of hearings before this Court. The parties tacitly asked the Court to take judicial notice thereof. Moreover, the authenticity of copies thereby relied on are not in dispute. Both sides had ample opportunity to present pertinent materials. Therefore, the documents are considered as if offered properly under summary judgment procedures, and the motion was treated as one for summary judgment and denied as such.

### Assertion of Mootness

Sevko contends that recovery on fraudulent conveyance actions must be distributed according to the respective interests of the debtor's creditors. Sevko then argues that any recovery which could be obtained by Ullman–Briggs through its claim must be distributed first to Comerica, which is a secured party with liens on virtually all of Old Salton's assets, to satisfy its claims. Therefore, Sevko concludes that the claim of Ullman–Briggs is moot because it is entirely subordinated to the claims of Comerica, and Ullman–Briggs could not receive any recovery based on the claim.

Both the Illinois Uniform Fraudulent Transfer Act and its predecessor are silent on the subject of the distribution of proceeds of a fraudulent transfer. New York Debtor and Creditor law is similarly silent on this issue. However, property may only be recovered by the trustee under § 548 of the Bankruptcy Code for the benefit of the estate, 11 U.S.C. § 550(a), and property of the estate is distributed to the creditors according to priorities set by the Code.

Cases cited by Sevko support the proposition that, when a fraudulent transfer is set aside, the assets that were fraudulently transferred must be distributed to creditors of the transferor according to the priorities set by applicable nonbankruptcy law. In *Indiana Nat. Bank v. Gamble*, 612 F.Supp. 1272 (N.D.Ill.1984), the court

found that the debtor's transfer of his house was a fraudulent conveyance and ordered the conveyance set aside, the house sold, and the proceeds distributed to the creditors. The court did not decide how the proceeds would be distributed, but it stated that it "assumes that distribution would follow the priorities of 26 U.S.C. § 6323." *Id.* at 1279. That was so because § 6323 of the Internal Revenue Code, Title 26, U.S.C., determines the priority of federal tax liens vis-a-vis other claims involved in that case.

In *McKinney v. Farmers' Nat. Bank of Keithsburg,* 104 Ill. 180 (1882), the Supreme Court upheld an order that set aside a fraudulent conveyance, sold the property involved, and distributed proceeds among debtor's judgment creditors *pro rata* according to the amounts of their judgments. The issue before that court was whether fraudulent conveyances were void or voidable as against transferor's creditors. The court held that they were void. *Id.* at 183. It ruled that a complaint by a junior lien holder to set aside a fraudulent conveyance does not disturb the priority of the senior lien holder to the property. *Id.* at 183–84.

In *Borin v. John Hancock Mut. Life Ins. Co.,* 21 Ill.App.2d 139, 157 N.E.2d 673 (1st Dist.1959), a judgment creditor garnished premiums that had been paid for life insurance policies while the debtor was insolvent. However, the court found that the creditor's recovery on these fraudulent transfers was subject to existing federal tax liens against the debtor's property which had priority over the creditor's judgment lien. *Id.* at 145, 157 N.E.2d at 676.

■ If Ullman–Briggs were attempting to set aside the allegedly fraudulent transfer that assertedly diverted assets belonging to Old Salton, then it would be clear that any assets recovered would have to be distributed according to the priorities of Old Salton's creditors. Such an effort could indeed be moot because Comerica was found to have a perfected security agreement covering all assets of Old Salton. However, Ullman–Briggs is here seeking to collect directly from Sevko by requesting a judgment be rendered directly against Sevko for its participation in the alleged transfer. This form of recovery is permitted under the Illinois Uniform Fraudulent Transfer Act, Ill.Rev.Stat., ch. 59, §§ 108 and 109, and its predecessor. *Tcherepin v. Franz,* 489 F.Supp. 43, 45 (N.D.Ill.1980); *Alan Drey Co., Inc. v. Generation, Inc.,* 22 Ill.App.3d 611, 317 N.E.2d 673 (1st Dist.1974). This Court noted in the confirmation hearing that, as part of the Plan, additional assets will be infused into Sevko which are available to its creditors for payments due under the Plan. See Transcript, *supra.* Therefore, Sevko is incorrect in asserting that there is nothing for this claimant to collect in the event Ullman–Briggs prevails on its claim.

■ Moreover, even assuming *arguendo* that Comerica might have priority over Ullman–Briggs to collect anything that might be due if the claim is processed, the asserted inability to collect still does not moot the claim. In *Triland Holdings & Co. v. Sunbelt Service Corp.,* 884 F.2d 205 (5th Cir. 1989), the plaintiff filed suit against a bank which was declared insolvent and put into receivership by the Federal Savings and Loan Insurance Corporation ("FSLIC"). The FSLIC argued, *inter alia,* for dismissal of the suit because the bank had no assets to satisfy the potential judgment. The Fifth Circuit rejected this argument stating,

> The general rule is that claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable. Damages should be denied on the merits, not on grounds of mootness.... The mere possibility that a judgment debtor lacks the means to satisfy its monetary liability does not kill the issues in a case. An indigent defendant otherwise could defeat any lawsuit simply by asserting that his poverty moots the claims against him. (citations omitted)

*Id.* at 208. Thus, Ullman–Briggs' claim is not moot so long as there is a possibility that Ullman–Briggs will be able to collect on damages at some future point if they prevail on their claim.

Based on the present record, the Court cannot rule that allowance of damages on

the instant claim could not possibly result in payment to Ullman–Briggs pursuant to the continued Plan. Since there is at least a possibility that Ullman–Briggs could collect on its claim, and there is no suggestion that the facts alleged are insufficient to plead a cause of action under any of the three counts that comprise the claim, the claim is not moot.

### Assertion of Collateral Estoppel

■ Sevko further argues that Ullman–Briggs is barred by collateral estoppel from litigating its claim because of the litigation at the confirmation hearing. Old Salton's claim against Sevko for $3,010,-443.69 was subordinated to all other claims and discharged under the Plan. Ullman–Briggs objected to this provision, and the Court overruled Ullman–Briggs' objection for reasons previously discussed. Ullman–Briggs has now filed a claim directly against Sevko. The previous finding that Comerica holds a *prima facie* lien against all assets of Old Salton does not dispose of the present claim because the claim does not lie against those assets. Moreover, the Court specifically anticipated at the confirmation hearing that Ullman–Briggs would file a claim after confirmation, when it ruled that Ullman–Briggs would not be prejudiced by confirmation if its claim against Sevko proved to be successful. See Transcript, *supra.* Therefore, Ullman–Briggs is not precluded by collateral estoppel from litigating the issues relating to its amended proof of claim.

### Asserted Retroactive Application of the Uniform Fraudulent Transfer Act

■ Sevko has questioned the applicability of the Uniform Fraudulent Transfer Act to this case because the allegedly fraudulent transactions occurred prior to January 1, 1990. Whether the Uniform Fraudulent Transfer Act or the prior statute is applied is irrelevant. As Judge Shadur noted in *U.S. v. Kitsos,* 770 F.Supp. 1230, 1235 n. 13,

> the new provisions of Ill.Rev.Stat. ch. 59, ¶ 105(a)(1) would produce the same result as the [old statute, Ill.Rev.Stat. ch. 59,

¶ 4] as to any conveyance found fraudulent *in fact,* while the new provisions of Ill.Rev.Stat. ch. 59, ¶¶ 105(a)(2) or 106 would produce the same result … as to any conveyance fraudulent *in law.*

However, further comment is appropriate on this issue. In prior decisions, this Court applied the prior statute, Ill.Rev.Stat. ch. 59, ¶ 4, to transactions occurring before January 1, 1990 because there was "no indication from the Illinois legislature that the new provisions should apply to transfers that occurred before its effective date." *In re Aluminum Mills Corp.,* 132 B.R. 869, 885 n. 14 (Bankr.N.D.Ill.1991). See also *In re Martin,* 113 B.R. 949, 956 n. 2 (Bankr.N.D.Ill.1990), *vacated,* 124 B.R. 69 (N.D.Ill.1991). However, we note that an Illinois state appellate court has addressed this issue in the context of granting injunctive relief against pre-enactment fraudulent transfers and found "that justice would be served by applying [the Uniform Fraudulent Transfer Act] retroactively." *Cannon v. Whitman Corp.,* 212 Ill.App.3d 79, 155 Ill.Dec. 503, 507, 569 N.E.2d 1114, 1118 (5th Dist.1991). For reasons set forth in the *Aluminum Mills* and *Martin* opinions, it is not clear that the Illinois Supreme Court would adopt the *Cannon* decision. Whether that makes a difference in this case remains to be seen. If it does, the Court invites further briefing from the parties at trial.

### Applicability of New York Law

■ Sevko contends that Count III must be dismissed because New York law does not control this case. Counts I and II plead violations of the Illinois Uniform Fraudulent Transfer Act, while Count III pleads a violation of New York Debtor and Creditor law. This raises the issue of whether Ullman–Briggs may plead violations of both Illinois and New York laws in its proof of claim. Each state has some connection to this claim. The allegedly fraudulent conveyance occurred in Illinois, and all the parties to this conveyance have their principal place of business in Illinois. However, the breach of contract judgment which underlies this claim was rendered in a New York court, Ullman–Briggs has its

principal place of business in New York, and Old Salton is a New York corporation.

Ultimately, a choice must be made as to which set of laws governs, and, when that choice is made, either Counts I and II or Count III will likely be dismissed. However, at this stage in the litigation, the Court shall treat the allegations concerning New York law as alternative pleadings. Since Ullman–Briggs has made sufficient allegations to justify relief under New York law, Sevko's motion to dismiss Count III will be denied.[4]

## CONCLUSION

For reasons discussed above, Sevko's motion to dismiss was denied in its entirety. With the case still viable, Sevko's motion to stay discovery was also denied.

---

4. Applications of Illinois law to this case is indicated for two reasons. First, the general tendency in deciding fraudulent conveyance claims is to apply the law of the situs of the property at the time of the transfer. *Roberts v. Norrell,* 212 F.Supp. 897, 900 (M.D.Ala.1963); 15A C.J.S. Conflict of Laws § 18(9) (1967) and cases cited therein. The property which is the subject of the fraudulent conveyance claim appears to have been located in Illinois since all parties to the sale of Old Salton's assets have their principal place of business in Illinois.

Second, when the difference in law would make no difference in the outcome of the case, conflict of law rules do not come into play, and courts should apply the rule of the forum state. *International Administrators, Inc. v. Life Insurance Co.,* 753 F.2d 1373, 1376 n. 4 (7th Cir.1985). Neither Sevko nor Ullman–Briggs have pointed to any difference between New York and Illinois fraudulent conveyance law which would cause the outcome to change depending on which law was applied, and the Court does not find any material difference for the purpose of the present motion.

While these reasons lead the Court to believe that Illinois law likely applies, a final decision on this issue cannot be made at this point, but will await evidence as to where the property was located and a final briefing by the parties.