**BANKERS TRUST COMPANY, Plaintiff–Appellant, Cross–Appellee,**

v.

**OLD REPUBLIC INSURANCE COMPANY, et al., Defendants–Appellees, Cross–Appellants.**

Nos. 91–2589, 91–2707.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1992.

Decided April 3, 1992.

Terry M. Grimm, George C. Lombardi, Winston & Strawn, Robert N. Hermes, Gerald G. Saltarelli, argued, Mary L. Hayes, Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, Chicago, Ill., for Bankers Trust Co.

Bruce R. Meckler, argued, Steven D. Pearson, Pope & John, Chicago, Ill., for Old Republic Ins. Co., Chicago Underwriting Group, Inc. in No. 91–2589.

Brian Frankl, Peterson & Ross, Chicago, Ill., for Employers Ins. Co. of Wausau.

Robert J. Lepri, Trizna & Lepri, Daniel J. Fumagalli, Fumagalli & Tecson, Chicago, Ill., for Lee Keeling & Associates, Inc.

Barry L. Kroll, Williams & Montgomery, Chicago, Ill., for Imperial Cas. & Indem. Co.

Richard A. Devine, Michael M. Marick, Bruce R. Meckler, argued, Steven D. Pearson, Michael K. Bartosz, Pope & John, Chicago, Ill., for Old Republic Ins. Co., Chicago Underwriting Group, Inc. in No. 91–2707.

Before POSNER and MANION, Circuit Judges, and VAN SICKLE, Senior District Judge.*

POSNER, Circuit Judge.

This appeal and (conditional) cross-appeal bring up to us a tangle of jurisdictional and procedural issues arising out of complex federal litigation. Back in the early 1980s, Bankers Trust, a large bank, made a large loan in (alleged) reliance on appraisals of the borrower's oil and gas reserves by Lee A. Keeling & Associates, Inc. ("LKA"). The borrower defaulted and Bankers Trust lost $30 million. In 1985 it brought a diversity tort suit in the federal district court in Oklahoma against LKA, charging that the latter had negligently overestimated the borrower's reserves. That suit is still pending, with trial finally scheduled for this coming May. In 1986, Old Republic Insurance Company, which had issued a liability insurance policy to LKA, brought a diversity suit in federal district court in Chicago against its insured, seeking to re-

* Hon. Bruce M. Van Sickle of the District of North Dakota, sitting by designation.

scind the policy on the ground that LKA had known when it took out the policy that Bankers Trust might sue it, and had in breach of a condition in the policy failed to warn Old Republic of this possibility. Cf. *Truck Insurance Exchange v. Ashland Oil, Inc.*, 951 F.2d 787 (7th Cir.1992). The following year, Bankers Trust filed the present suit, which is also a diversity suit, against Old Republic. It seeks a declaration that if Bankers Trust wins a judgment in the Oklahoma suit, Old Republic must indemnify LKA up to the limits of the policy. Two months after this suit was filed, Old Republic settled its suit with LKA. The parties agreed that Old Republic would be liable on the policy only up to $425,000. Bankers Trust then amended its complaint in the present case to add a count charging that the settlement was fraudulent and should not affect Old Republic's contingent duty to indemnify LKA for up to $3 million of any judgment that Bankers Trust should win in Oklahoma. Although Old Republic is merely an excess insurer of LKA, the primary insurer claims to have exhausted its policy limit of $2 million in the pretrial phase of the Oklahoma suit, which the primary insurer is defending on LKA's behalf.

■ Old Republic moved to dismiss Bankers Trust's complaint on the grounds that it failed to plead fraud with the particularity required by Fed.R.Civ.P. 9(b) and that Bankers Trust, though not a party to Old Republic's suit against LKA, was bound by the settlement of it. The district judge denied the motion, 697 F.Supp. 1483 (N.D.Ill.1988), but later dismissed the suit on the ground that until Bankers Trust obtained a judgment against LKA it would have no actual "controversy" with LKA's insurer within the meaning of Article III. Bankers Trust appeals the dismissal. Old Republic has filed a cross-appeal attacking the judge's 1988 ruling in the hope that, should we disagree with the judge's later ruling and conclude that there is jurisdiction, we shall order the suit dismissed anyway—on the merits.

In support of the district judge's jurisdictional ruling Old Republic cites cases in this circuit which say that a suit to determine an insurer's obligations to indemnify its insured is premature until the insured has been determined to be liable to somebody. *Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165, 1169 (7th Cir.1969); *Argento v. Village of Melrose Park,* 838 F.2d 1483, 1492 (7th Cir.1988). Other circuits take a more liberal view. *ACandS, Inc. v. Aetna Casualty & Surety Co.,* 666 F.2d 819, 823 (3d Cir.1981); *Rubins Contractors, Inc. v. Lumbermens Mutual Ins. Co.,* 821 F.2d 671, 674 (D.C.Cir.1987); *Eureka Federal Savings & Loan Ass'n v. American Casualty Co.,* 873 F.2d 229, 232 (9th Cir.1989). The conflict dissolves when one realizes that our cases state a general rule rather than an absolute one. *Cunningham* describes its rule as a principle of discretion in the grant of declaratory relief, 407 F.2d at 1169, while *Argento* says that "an insurer *ordinarily* cannot obtain a declaratory judgment as to its liability prior to the insured first being found liable." 838 F.2d at 1492 (emphasis added). On the one hand it would be absurd to suppose that a passenger planning a flight on an airline could, before emplaning, sue the airline's insurer for a declaration that in the event of the plane's crashing and the airline's being held liable to his estate yet lacking sufficient assets to pay the judgment, the insurer would be obligated to indemnify the airline up to the limits of the insurance policy. Cf. *Solo Cup Co. v. Federal Ins. Co.,* 619 F.2d 1178, 1189 (7th Cir.1980). On the other hand we just held in the *Truck Insurance Exchange* case, without supposing that we were going against the circuit's rule, that once the insured's liability has been fixed by a judgment the owner of the judgment can sue the insurer for a declaration that the insurance policy will pay it. 951 F.2d at 789; see also *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

■ This case goes a step beyond the facts of *Truck Insurance Exchange* because Bankers Trust may lose its suit against LKA (or win a judgment for no more than $425,000), in which event its suit for a declaration that Old Republic is obligated to indemnify LKA for up to $3 mil-

lion of that judgment will indisputably be moot. But we do not think that this possibility takes the case out of Article III's grant of jurisdiction over cases and controversies; it is relevant rather to the district judge's exercise of his equitable discretion to grant or withhold declaratory relief and to accelerate or retard his consideration of this suit in tandem with the Oklahoma suit. We have emphasized in recent cases, for example *Wooten v. Loshbough,* 951 F.2d 768, 769 (7th Cir.1991), that Article III requires only a probabilistic injury. Of course this doesn't mean that any probability, however slight, of injury is enough to permit a suit to be maintained in federal court. We are dealing with matters of degree. In our hypothetical case of the airline passenger, the probability of injury (literally) is too slight; the passenger is seeking advice to help him decide whether to fly rather than a declaration of his rights against someone with whom he has a controversy. This case is different. There is a real disagreement between Bankers Trust and Old Republic, with the former believing that the $3 million policy that Old Republic issued to LKA is valid and Old Republic believing not; and it is not an academic disagreement—Old Republic would not have sued LKA if it were. Old Republic does not argue that *that* suit failed to invoke the jurisdiction of the district court, though it is no more and no less contingent than Bankers Trust's suit, which indeed is just the mirror image of Old Republic's. We cannot say that the probability that Bankers Trust, which has sued LKA for $30 million, will win a judgment in excess of the meager policy limits resulting from the settlement is so slight that Bankers Trust has nothing practical at stake in this case. Were there only a 10 percent chance of its obtaining a judgment in excess of those limits—say a judgment of $5 million—the actuarial value of its claim against Old Republic would still be substantial.

Granted, there is another excess insurer in the picture, Employers Insurance Company of Wausau, whose $3 million policy kicks in after Old Republic's policy limits are reached. Wausau, however, is a code-fendant in Bankers Trust's suit and is contesting its obligations under the policy on grounds similar to Old Republic's. Even if Wausau were not resisting and even if its liability begins at the new, lower policy limits in Old Republic's policy rather than at the original, higher limits, so that Bankers Trust would have to win a judgment against LKA for more than $3,425,000 before it was hurt by the settlement, the prospects for a larger judgment are not so dim as to bar Bankers Trust from maintaining this suit. Bankers Trust has sued for $30 million and there is no suggestion that that is a grossly inflated estimate of its loss, should it be able to establish liability. It is true that we have left out of consideration LKA's own assets, which would be available to pay a judgment. But, so far as appears, LKA is a small firm that could not begin to pay such a large judgment; indeed, Bankers' Trust theory of fraud, of which more shortly, assumes that LKA is (or at least has become, after the settlement with Old Republic) unable to pay a large judgment. And contrary to what we suggested earlier, Wausau's excess policy probably would *not* drop down to the renegotiated limits of Old Republic's policy, *United States Fire Ins. Co. v. Charter Financial Group,* 851 F.2d 957 (7th Cir. 1988), in which event there would be no insurance coverage for the part of any judgment that Bankers Trust might win against LKA that lay between $425,000 and $3 million, as well as above $6 million; and the coverage between $3 million and $6 million would be incomplete.

■ It is as if a widower had named his only son as the sole beneficiary in his will, and someone (X) by means of fraud induced the father to tear up the will and write a new one naming X as his sole beneficiary. We take it that the son would not have to wait until his father's death in order to sue X for fraud, even though until then the son's interest must remain contingent since his father could always disinherit him. An ironclad rule that the insured's victim can never bring suit against the insurer unless he has a judgment against the insured would be equally inappropriate.

For suppose that the day after the accident in which the victim was injured, and therefore long before he could feasibly bring a tort suit, let alone obtain a judgment, the insurer declared the liability insurance policy void; and suppose the insured had no other assets. Then a tort suit would be worthless unless the insured's victim could obtain a declaration that the policy was valid after all. Must the victim go to the expense of prosecuting to judgment a tort suit that will be completely worthless unless the policy is declared valid? Or does not the victim have sufficient interest in the policy to proceed simultaneously, on both fronts, against insured and insurer, or even against the latter first if less preparation is necessary for that suit? If, after the accident, the insured had stopped paying his insurance premiums, so that the policy was in danger of lapsing, the victim could step in and pay the premiums in his place to keep the policy alive. *Truck Insurance Exchange v. Ashland Oil, Inc.,* supra, 951 F.2d at 789; 12A *Couch on Insurance* § 45.897 (rev. ed. 1981). This shows that the victim of an insured's tort, even though he is not a third-party beneficiary of his injurer's insurance policy, has a legally protectable interest in that policy before he has reduced his tort claim to judgment (but only after he has been injured). Such an interest is all one needs to bring a dispute that seriously threatens it within the scope of Article III.

■■■ This conclusion is not inconsistent with the refusal of most states to permit the victim of an insured injurer to sue the injurer's liability insurer directly. The reason for that refusal, a reason wholly unengaged by a case such as this, is to protect the insurance company from the hostility of juries. *Zegar v. Sears, Roebuck & Co.,* 211 Ill.App.3d 1025, 156 Ill.Dec. 454, 455, 570 N.E.2d 1176, 1177 (1991). Anyway Bankers Trust is not suing Old Republic to establish that LKA committed a tort against Bankers Trust, but only to establish that Old Republic's insurance policy remains in force up to the policy limits. Such a suit is not a direct action suit against an insurer. *Reagor v. Travelers Ins. Co.,* 92 Ill.App.3d 99, 103–04, 47 Ill. Dec. 507, 510, 415 N.E.2d 512, 515 (1980).

■■■ We place no weight, however, on Bankers Trust's argument that the retention of jurisdiction and the determination of the validity of Old Republic's insurance policy are necessary to facilitate settlement of the suit in Oklahoma. No doubt, by clarifying the actual stakes in that suit, a determination of the policy limits will do this. But the utility of judicial advice is precisely what one cannot point to in support of federal jurisdiction. That utility is however pertinent to the district court's exercise of equitable discretion once the jurisdictional issue has been laid to rest. As recently emphasized in another case involving a request for a declaratory judgment regarding insurance coverage, *Mitcheson v. Harris,* 955 F.2d 235 (4th Cir.1992), there is no "right" to declaratory relief; a request for such relief is addressed to the discretion of the district court. *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *A.G. Edwards & Sons, Inc. v. Public Building Comm'n,* 921 F.2d 118, 120 (7th Cir.1990). That court must also decide how swiftly to proceed with the case. With Bankers Trust's suit against LKA coming on for trial soon, the court on remand may decide to hold off resolving the dispute between the bank and the insurer until it is clearer that that dispute will not become moot. (On abstention in favor of parallel state litigation, see, e.g., *Evans Transportation Co. v. Scullin Steel Co.,* 693 F.2d 715 (7th Cir.1982); *Mitcheson v. Harris, supra.*) Or the court may decide to accelerate the resolution of this case in order to facilitate a settlement of the other one. That is for the district judge to decide in the first instance.

■■■ So there is jurisdiction, and we proceed to Old Republic's alternative grounds for upholding the dismissal (albeit on the merits, rather than for want of jurisdiction). The first is limited to the fraud count. Rule 9(b) requires that the circumstances constituting an alleged fraud or mistake be pleaded with particularity. This may seem an anomalous requirement

in the age of notice pleading and liberal discovery. Jeff Sovern, *Reconsidering Federal Civil Rule 9(b): Do We Need Particularized Pleading Requirements in Fraud Cases?*, 104 F.R.D. 143 (1985). Most of the reasons given for the rule are indeed makeweights. (See the list in 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1296 (2d ed. 1990).) But it has a germ of sense. Accusations of fraud can do serious damage to the goodwill of a business firm or a professional person. People should be discouraged from tossing such accusations into complaints in order to induce advantageous settlements or for other ulterior purposes. Rule 9(b) does that.

▮ Why, if this is the true rationale of Rule 9(b), allegations of mere mistake should have to be particularized is a mystery. However, we have found (though without pretending to have conducted a complete search) only two cases in the last half century in which a complaint was dismissed for failure to allege mistake with adequate particularity. *United States v. $3,216.59*, 41 F.R.D. 433 (D.S.Car.1967); *Reed v. Turner*, 2 F.R.D. 12 (E.D.Pa.1941). And we can find neither judicial nor scholarly discussion of the rationale for that aspect of Rule 9(b). So perhaps it is a dead letter, but that is a question for another day. This is a fraud case, and Old Republic interprets Rule 9(b) to require full-scale fact pleading in a fraud case: that is, Bankers Trust must plead the facts that (if true) demonstrate that the settlement of Old Republic's dispute with LKA was fraudulent. We don't read Rule 9(b) so broadly. The reported cases involve misrepresentations, the commonest kind of fraud, and merely require the plaintiff to state in his complaint "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990); see also *Graue Mill Development Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992–93 (7th Cir.1991); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990). They do not require him to plead facts

showing that the representation is indeed false. So if the claim were that Old Republic had on December 5, 1982, misrepresented the policy limits to Bankers Trust, the complaint would have to allege all this but it would not have to allege that the misrepresentation was that the policy limits were 25¢ whereas in fact they were $25 million as shown by the attached copy of the policy, etc.

▮ It would have been enough, therefore, if Bankers Trust's complaint had alleged that on such and such a date Old Republic and LKA entered into an accord and satisfaction that was a fraud on Bankers Trust because it was made without adequate consideration. Bankers Trust's theory of the fraud is that LKA couldn't afford to litigate against both it and Old Republic, both of which had sued it, and therefore it knuckled under to Old Republic's demand for rescission (save for the $425,000) even though the liability policy was in fact perfectly valid. In effect LKA conveyed an asset to one of its two potential judgment creditors, Old Republic, with intent to defraud another, Bankers Trust. Cf. *Union Central Life Ins. Co. v. Flicker*, 101 F.2d 857, 860 (9th Cir.1939); *Diamond Heights Homeowners Ass'n v. National American Ins. Co.*, 227 Cal.App.3d 563, 277 Cal.Rptr. 906 (1991). Whether this makes out a case of fraudulent conveyance under Illinois law, on which see Ill.Rev. Stat. ch. 59, ¶¶ 101 *et seq.; Borin v. John Hancock Mutual Life Ins. Co.*, 21 Ill. App.2d 139, 157 N.E.2d 673 (1959); *King v. Ionization International, Inc.*, 825 F.2d 1180, 1186–87 (7th Cir.1987), we need not decide.

▮ Bankers Trust did not have to get into the depth of detail of the preceding paragraph. The allegations of fraud that it *was* required to make, however, are made in its complaint on "information and belief," a clearly improper locution under the current federal rules, which impose (in the amended Rule 11) a duty of reasonable precomplaint inquiry not satisfied by rumor or hunch. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir.

1989) (en banc); *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 365 (7th Cir.1990); *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 684 (7th Cir.1990). Even before Rule 11 was amended to require this, and *a fortiori* since, it was understood that the duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading those circumstances on "information and belief" unless they were facts inaccessible to the plaintiff, in which event he had to plead the grounds for his suspicions. *Duane v. Altenburg*, 297 F.2d 515, 518–19 (7th Cir.1962); *Hirshfield v. Briskin*, 447 F.2d 694, 697 (7th Cir.1971); *Stern v. Leucadia National Corp.*, 844 F.2d 997, 999 n. 1, 1003–04 (2d Cir.1988); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989). The complaint alleges that "upon information and belief, Old Republic's action against LKA is without merit." The merit of the suit is a public fact, not anything within the exclusive control of Old Republic. The complaint further alleges that "upon information and belief, LKA received inadequate and insufficient consideration" for the settlement. The amount of the consideration—Old Republic's agreement to pay up to $425,000 of any judgment or settlement in favor of Bankers Trust in the Oklahoma suit—is a matter of public record, so its adequacy depends entirely on the merit of Old Republic's claim for rescission, also a public fact as we have said.

The allegations about merit and consideration are not merely details of the plaintiff's theory of fraud, which as we said did not have to be pleaded. Without those allegations, all the count alleges is that Old Republic and LKA settled a lawsuit. They are essential, but being based on information and belief must be disregarded. Bankers Trust violated Rule 9(b), and the fraud count in its complaint should have been dismissed in accordance with Old Republic's motion.

█ The fraud count in the complaint—not the whole lawsuit, and not necessarily even the fraud part of the suit, since the district judge may permit Bankers Trust to replead. We shall therefore proceed to Old Republic's argument that Bankers Trust should be bound by the settlement between its two adversaries as if it had been a party to their suit, which it was not. For if that argument is sound, the entire suit, and not merely a part of the complaint, should have been dismissed. Old Republic argues that Bankers Trust sat by, well knowing about the suit and its progress—in fact responding to discovery requests by the parties to it—and if it didn't want to be bound by the outcome of the litigation, whether that outcome took the form of a litigated judgment or a dismissal following settlement, it should have moved to intervene. We cannot discover where such a duty to intervene might come from. Intervention is a right, not a duty. If Old Republic wanted to bind Bankers Trust by the outcome of the litigation it should have tried to join it as a party. "Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree." *Martin v. Wilks*, 490 U.S. 755, 765, 109 S.Ct. 2180, 2186, 104 L.Ed.2d 835 (1989).

We can imagine a case where by representations or conduct a nonparty might estop itself to attack a judgment in a suit to which it was not a party, but there is no argument of promissory or equitable estoppel here. *Penn Central Merger and N & W Inclusion Cases*, 389 U.S. 486, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968), on which Old Republic relies heavily, was that sort of case, because it was understood that the parallel proceedings would be stayed to enable all issues to be resolved in one action, and in these circumstances the parties to the other proceedings acted at their peril in failing to intervene in it. *Id.* at 502, 505–06, 88 S.Ct. at 610, 611–12; see *Martin v. Wilks, supra*, 490 U.S. at 765–66, 109 S.Ct. at 2186. Also different from the present case is *in rem* litigation, where nonparties can be bound and therefore where a failure to seek intervention can be fatal. *Cummins Diesel Michigan, Inc. v. The Falcon*, 305 F.2d 721, 723 (7th Cir.1962). This is not such a case either.

The judgment dismissing the suit is reversed and the case is remanded with instructions that the district court consider whether to permit Bankers Trust to amend its complaint to bring it into conformity with Rule 9(b)—if it can do so consistently with Rule 11 and with the law of fraud, for of course merely settling a case on bad terms is not a fraud against anybody—and for such additional proceedings as may be consistent with this opinion.

REVERSED AND REMANDED, WITH DIRECTIONS.