912 F.2d 889
 Fed. Sec. L. Rep. P 95,421, 17 Fed.R.Serv.3d 873,
RICO Bus.Disp.Guide 7548
 John H. SEARS, Dorothy M. Sears, William J. Sears, Connie J.
Sears, Todd A. Sears, Christopher J. Sears, Herman
T. Hinshaw, and Ruth A. Hinshaw,
Plaintiffs-Appellants,
v.
George R. LIKENS, Don B. Earnhart, Louis S. Hensley, Jr.,
Steven R. Skiles, Pendleton Company, Inc., James
Ayres, Lapel Banking Company, and
Pendleton Banking Company,
Defendants-Appellees.
 No. 89-2926.
United States Court of Appeals, Seventh Circuit.
 Argued May 16, 1990.
Decided Aug. 15, 1990.
 
 1
 Dean E. Richards, Indianapolis, Ind., Charles W. Ewing, Columbus, Ohio, for plaintiffs-appellants.
 
 
 2
 Jerry P. Belknap, Barnes & Thornburg, Charles J. Linder, Jr., H. Andrew Sonneborn, Sharon Wright, Linder & Hollowell, Indianapolis, Ind., for defendants-appellees George R. Likens and Don B. Earnhart.
 
 
 3
 Jerry P. Belknap, Barnes & Thornburg, H. Andrew Sonneborn, Sharon L. Wright, Linder & Hollowell, Anthony W. Mommer, James McIntire, Jeffrey C. McDermott, Krieg, Devault, Alexander & Capehart, Indianapolis, for defendants-appellees Louis S. Hensley, Jr., Steven R. Skiles.
 
 
 4
 Before WOOD, Jr., and FLAUM, Circuit Judges, and CRABB, Chief District Judge.[1]
 
 
 5
 CRABB, Chief District Judge.
 
 
 6
 Appellants John H. Sears, Dorothy M. Sears, William J. Sears, Connie J. Sears, Todd A. Sears, Christopher J. Sears, Herman T. Hinshaw and Ruth A. Hinshaw appeal the district court's dismissal of their complaint raising claims against defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), the Securities Act of 1933, the Securities Exchange Act of 1934, and Rule 10b-5 (17 C.F.R. Sec. 240.10b-5). We affirm.
 
 Procedural History
 
 7
 Appellants are former minority shareholders of the State Bank of Lapel in Indiana. Appellees are controlling agents of the bank, the holding company that purchased the bank's assets and liabilities, and another company.[2] Appellants filed suit in 1985, alleging various wrongs on the part of appellees that deprived appellants of the full value of their stock when the bank went into dissolution.
 
 
 8
 Appellants' complaint was lengthy (69 pages including exhibits) and diffuse. Appellants moved to dismiss it pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). The district court read the complaint with care and imagination as it is required to do under Rule 12(b)(6) and concluded, with some difficulty, that it could be read fairly as alleging the following pertinent facts.[3]
 
 
 9
 * * * * * *
 
 
 10
 On February 5, 1985, the State Bank of Lapel and certain defendants entered in two agreements; it is these agreements that are at the heart of this case. First, the State Bank of Lapel (as seller) and defendants Earnhart, Likens, Skiles, Hensley and Pendleton Company, Inc. and one Anna Woods (as purchasers) entered into a "Purchase Agreement."[4] Under the terms of the Purchase Agreement, the State Bank of Lapel agreed to sell certain real estate and loans to the purchasers in exchange for the sum of $1,500,567. Second, the State Bank of Lapel (as seller) and Pendleton Banking Company (as purchaser) entered into a "Purchase and Assumption Agreement." Under this agreement, the State Bank of Lapel agreed to sell its remaining assets (i.e., those not sold in the Purchase Agreement) to Pendleton Banking Company, and Pendleton Banking Company agreed to pay the State Bank of Lapel the sum of $30,000 and to assume all of its liabilities.
 
 
 11
 On February 16, 1985, defendant Likens, as president of the State Bank of Lapel and with the consent of its board of directors, sent a notice to all of the shareholders of the State Bank of Lapel. The notice informed the shareholders of a special shareholders meeting to be held on March 2, 1985, and was accompanied by a proxy statement. The purpose of the special shareholders meeting was to vote on the "proposed sale of substantially all of the assets and transfer of all liabilities of the Bank to Pendleton Banking Company" (the Purchase and Assumption Agreement) ... The proxy statement outlined the terms of the Purchase and Assumption Agreement; it also outlined the terms of the Purchase Agreement, whereby certain loans and real estate would be sold by the State Bank of Lapel to defendants Earnhart, Likens, Skiles, Hensley, and the Pendleton Company, Inc., and Anna Woods (who is not a defendant). The proxy statement also informed the shareholders that "if the Proposal [was] approved, each shareholder of the Bank [would] ultimately receive $1.00 for each share of Bank common stock owned." Id. A majority of the shareholders voted to approve this proposal; the plaintiffs either abstained or voted against the proposal.
 
 
 12
 On June 7, 1985, defendant Likens sent a notice ... of a second shareholders meeting ... "to submit to the shareholders the question of dissolution of the Bank in conjunction with a previously approved and executed plan transferring substantially all of the assets and liabilities of the Bank to Pendleton Banking Company." A proxy statement attached to the notice informed the shareholders of the procedures by which the State Bank of Lapel would be dissolved; it also informed the shareholders, once again, that "if the Proposal [was] approved, each shareholder of the Bank [would], upon final dissolution, receive $1.00 for each share of Bank common stock owned at the time of dissolution." Id. A majority of the shareholders voted to approve this proposal; the plaintiffs either abstained or voted against the proposal.
 
 
 13
 * * * * * *The district court granted appellees' motion to dismiss, finding that appellants had failed to state any claims on which relief could be granted. The court did not state that the complaint was dismissed with prejudice. However, it had that effect because the court did not specify that it was without prejudice. Greene v. Meese, 875 F.2d 639, 643 (7th Cir.1989) ( [u]nless the court otherwise specifies, any dismissal, other than for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication on the merits and is therefore with prejudice). Appellants never moved for leave to file an amended complaint but instead filed this appeal.[5]
 
 OPINION
 
 14
 The following issues are before the court: (1) whether the district court correctly dismissed appellants' RICO claims for lack of standing; (2) whether the district court correctly dismissed appellants' claims under the Securities Act of 1933 because appellee State Bank of Lapel is exempt under the statute and because the appellants failed to state their claims with particularity; (3) whether the district court correctly dismissed appellants' claims under the Securities Exchange Act of 1934 and Rule 10b-5 for failure to state the claims with particularity; and (4) whether the district court properly dismissed the appellants' claims "with prejudice" under Fed.R.Civ.P. 12(b)(6).
 
 1. Rico Standing
 
 15
 The district court found correctly that the appellants lack standing to sue under the civil RICO statute. Shareholders of a corporation do not have standing as individuals to bring a RICO action for diminution in the value of their stock caused allegedly by racketeering activities conducted against the corporation. Rylewicz v. Beaton Services, Ltd., 888 F.2d 1175, 1179 (7th Cir.1989); Adams-Lundy v. Association Flight Attendants, 844 F.2d 245, 250 (5th Cir.1988). In other words, a RICO claim is a corporate asset, not an individual one.
 
 
 16
 There is no merit to appellants' argument that they could not have brought a shareholder's derivative action because the corporation was in dissolution, and therefore did not exist. In Indiana, a financial institution in dissolution proceedings does not cease to exist until a certificate of dissolution has been issued and the articles of dissolution have been recorded. Ind. Code Sec. 28-1-3.1-16. Furthermore, in Indiana, a dissolved corporation continues its corporate existence for purposes of winding up and liquidating its business affairs. Ind.Code Sec. 23-1-45-5. Appellants could have brought suit in the name of the corporation because a certificate of dissolution had not been issued at the time appellants brought their suit.
 
 
 17
 Because appellants lack standing to bring a RICO claim, we need not address the district court's dismissal of the claims on the alternative grounds of failure to plead with particularity and failure to allege a pattern of racketeering.
 
 2. Securities Act of 1933
 
 18
 Appellants brought action under Secs. 5, 12(1), 12(2), 15, and 17(a) of the Securities Act of 1933 on the ground that the appellees offered and sold securities by means of a false prospectus. 15 U.S.C. Sec. 77l.
 
 
 19
 As the district court observed, appellants have not alleged that a "prospectus" or "securities" existed in this case. In addition, the appellants' claims under Secs. 5, 12(1), 12(2), and 15 are misplaced for the following reasons: (1) securities "issued or guaranteed" by a state bank are exempt from the provisions of the Securities Act, 15 U.S.C. Sec. 77c(a)(2); and (2) the appellants failed to state with particularity how any "prospectus" was "false and misleading" as required by Fed.R.Civ.P. 9(b).
 
 
 20
 To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.
 
 
 21
 Design Inc. v. Synthetic Diamond Technology, Inc., 674 F.Supp. 1564, 1569 (N.D.Ill.1987). The appellants fail to satisfy this 9(b) standard: their complaint is bereft of any detail concerning who was involved in each allegedly fraudulent activity, how the alleged fraud was perpetrated, or when the allegedly fraudulent statements were made. Rather, the complaint lumps all the defendants together and does not specify who was involved in what activity.
 
 
 22
 Appellants' claim under Sec. 17(a) of the Securities Act of 1933 fails as well. This court has held that Sec. 17(a) should not be read to imply a private right of action. See Schlifke v. Seafirst Corp., 866 F.2d 935, 942-943 (7th Cir.1989) ("[w]e are also disinclined to accept the plaintiffs' suggestion that we imply a private right of action under section 17(a) of the Securities Act of 1933 ... A decisive majority of recent authorities have refused to imply a right of action under section 17(a) ... We believe this authority should prevail").
 
 
 23
 Appellants make the argument that appellees Earnhart, Hensley, Skiles, Pendleton and Ayres were secondary issuers under the 1933 Act and as such are not exempt from its provisions as is the Lapel State Bank. In light of appellants' failure to meet the requirements of Rule 9(b) by alleging with minimal particularity what it was that these appellees did to violate the Act, we do not reach this argument.
 
 
 24
 3. Securities Exchange Act of 1934 and Rule 10b-5
 
 
 25
 The district court was correct in holding that appellants' claims under Secs. 16(a) and 20 of the Securities Exchange Act of 1934 and Rule 10b-5 must fail for lack of particularity. It is well established that "Rule 9(b) [of the Federal Rules of Civil Procedure] governs claims based on fraud and made pursuant to the federal securities laws." In re Olympia Brewing Co. Securities Litigation, 674 F.Supp. 597, 618 (N.D.Ill.1987) (citing Tomera v. Galt, 511 F.2d 504, 508 (7th Cir.1975)). We agree with the district court that, "[t]he plaintiffs fail to state in any detail what misrepresentations were made by the defendant, to whom these misrepresentations were made, when these misrepresentations were made, or how these misrepresentations furthered the alleged fraudulent scheme." Sears v. Likens, No. IP85-1277-C, slip op. at 13 (S.D.Ind., Aug. 11, 1989) (emphasis in the original).
 
 
 26
 Appellants' complaint contains no specific information about the alleged fraudulent activities as required by Rule 9(b). Rather, the complaint proffers only conclusory allegations regarding such conduct. The district court did not err when it dismissed the complaint.
 
 
 27
 4. Dismissal "With Prejudice"
 
 
 28
 Finally, appellants argue that the district court improperly dismissed the case "with prejudice" and did not sufficiently consider the legal theories presented to it. This argument is rebutted by the district court's thorough analysis of the issues before it. Furthermore, it is too late for appellants to argue that the district court should have given them leave to amend the complaint. They never requested it.
 
 
 29
 The dismissal of the complaint by the district court is AFFIRMED.
 
 
 
 [1]
 The Honorable Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation
 
 
 [2]
 The district court assumed that appellants' reference in their complaint to the State Bank of Lapel was intended as a reference to Lapel Banking Company, the defendant named in the caption of their complaint. We make the same assumption
 
 
 [3]
 Our own review of the sufficiency of the complaint was complicated by the failure of any of the parties to make the complaint a part of the appendix
 
 
 [4]
 The relationship of Pendleton Banking Company and Pendleton Company, Inc. remains obscure. Appellants did not explain it in their complaint and shed no light on it in their appellate briefs and arguments
 
 
 [5]
 The record reflects that a final judgment was never entered in this case. However, since the finality of the district court's decision is without question, lack of a separate final judgment document will not defeat our jurisdiction. See Smith-Bey v. Hospital Adm'r, 841 F.2d 751, 756 (7th Cir.1988)