Constantine STAMATIO, on behalf of himself and all others similarly situated, Plaintiffs,

v.

HURCO COMPANIES, INC., et al., Defendants.

No. IP 94–308 C.

United States District Court, S.D. Indiana, Indianapolis Division.

April 12, 1995.

Peter G. Tamulonis, Kightlinger & Gray, Indianapolis, IN, Kenneth A. Jacobsen and Francis J. Farina, Chimicles Jacobsen & Tikellis, Haverford, PA, for plaintiffs.

Christopher G. Scanlon, Kevin M. Toner, Scott D. Himsel, Baker & Daniels, and James A. McDermott, Anne N. DePrez, and Anne C. McGown, Barnes & Thornburg, Indianapolis, IN, for defendants.

ENTRY

BARKER, Chief Judge.

Defendants Hurco Companies, Inc., ("Hurco") et al., and Coopers & Lybrand ("C & L") (collectively "Defendants") move to dismiss Plaintiff's Complaint pursuant to Fed. R.Civ.P. 9(b) and 12(b)(6). For the reasons stated below, the Court grants Defendants' motion to dismiss Counts I and II with prejudice and dismisses Count III without prejudice.

## I. BACKGROUND

Defendant Hurco, an Indiana corporation located in Indianapolis, manufactures computerized machine tools and systems. The other individual defendants include Hurco's President and Chief Executive Officer, Brian D. McLaughlin, former Chief Financial Officer, Michael K. Campbell, former Vice President of Finance, Ronald L. Broughton, present Chief Financial Officer, Roger J. Wolf, and three directors who serve on Hurco's Audit Committee, Richard T. Niner, Charles E.M. Rentschler and Andrew L. Lewis IV (collectively, the "Individual Defendants").

From June, 1992, to March, 1993, Constantine Stamatio ("Stamatio" or "Plaintiff"), a Pennsylvania resident, purchased a total of 800 shares of Hurco common stock.[1] He brings this action on behalf of all persons who purchased Hurco's common stock from June 1, 1992[2] through August 30, 1993[3] (the "Class Period"). Stamatio has also sued C & L, Hurco's independent auditor, which conducted audit examinations and certified various financial statements, including the consolidated financial statements of Hurco for the fiscal year ending October 31, 1992. *See* Complaint, at ¶ 9.

The Court derives the following facts from Plaintiff's Complaint and construes the allegations as true for the purposes of this motion. Hurco imports much of its machine tool components from Japan and Taiwan. Complaint, at ¶ 27. In 1986, the United

---

1. Stamatio's purchases were as follows: June 1, 1992—200 shares at $10.00 per share; August 5, 1992—200 shares at $7.00 per share; March 29, 1993—400 shares at $6.75 per share.

2. June 1, 1992, was the date immediately after a PBS program highlighted Hurco's global competitiveness.

3. August 30, 1993, was the date when Hurco announced its 1993 third quarter results.

States entered into Voluntary Restraint Agreements ("VRAs") with Japan and Taiwan, thereby limiting the number of component parts these countries could ship to the U.S. *Id.* The existence of the VRAs forced Hurco to seek domestic alternative sources to replace the foreign-manufactured machine tool components. Hurco's increased reliance on domestic sources of components caused significant increases in engineering time, rework, scrapping, and manufacturing overhead which depleted the value of Hurco's inventories.

Plaintiff alleges that Hurco and its officers issued materially false and misleading statements concealing material information regarding the impact of the above events. Specifically, Plaintiff notes that although the VRAs were scheduled to expire on December 31, 1991, (thereby alleviating Hurco's sourcing problem), the U.S. extended the VRAs with Taiwan and Japan to expire on December 31, 1993. Plaintiff maintains that Hurco's cost accounting and inventory systems did not account for the significant cost increases from the 1991 VRA extension until the third quarter, ending July 31, 1993, when Hurco disclosed that its serious inventory problems resulted in a special $3.4 million charge. Moreover, prior to its late disclosure of the inventory problems, Hurco had received much favorable media publicity as a corporate success story.[4] In the wake of the third quarter report, Hurco's stock plummeted to $2.75 on August 20, 1993, after having reached a high of $10 on December 31, 1992.

Plaintiff filed this lawsuit on February 1, 1994, and asserts claims against all defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Act") and Rule 10b–5 (Count I) and common law fraud (Count III). Plaintiff also claims that the Individual Defendants are liable as controlling persons under Section 20(a) of the Act (Count II). Defendants now move to dismiss pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).

## II.  DISCUSSION

### A.  Standards for Motion to Dismiss

In considering a motion to dismiss a complaint under Fed.R.Civ.P. 12(b)(6), the Court accepts all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994). "Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate only if the plaintiff can establish no set of facts upon which relief can be granted." *Id.; Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■  Fed.R.Civ.P. 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The Seventh Circuit has noted that the rule serves three main purposes: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 777 (1994) (citations omitted). In order to accomplish these purposes, a plaintiff is required to state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992) (quoting *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990)).

### B.  Aiding and Abetting Liability

■  The Court first disposes of the co-conspirator or aider and abettor liability claim against C & L or any of the Individual Defendants. In *Central Bank v. First Interstate Bank,* —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the U.S. Supreme Court held that there is no aiding and abetting liability in private actions under Section 10(b) and Rule 10b–5. Because neither C & L nor the Individual Defendants can be held

---

**4.** In addition to the PBS program praising Hurco, the *New York Times,* and a best-selling book

*In Search of Excellence* also showcased Hurco's strengths.

liable as co-conspirators or aiders and abettors, the Court grants Defendants' motions to dismiss this claim.

### C. Particularity of 10(b)[5] and 10b–5[6] Fraud Allegations against Hurco and the Individual Defendants

■ The leading Seventh Circuit case involving pleading securities fraud[7] with particularity—*DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir.), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990)—requires that plaintiffs must plead the circumstances constituting fraud in detail—the "who, what, when, where, and how. . . ." *See also Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir.1993). The *DiLeo* court further stated that "[b]ecause only a fraction of financial deteriorations reflects fraud, plaintiffs may not proffer the different financial statements and rest. Investors must point to some facts suggesting that the difference is

attributable to fraud." *Id.* at 627. Finally, the court noted that while the defendant's mental state need not be pleaded with particularity, "the complaint must still afford a basis for believing that plaintiffs could prove scienter[8]." *Id.* at 629.[9]

Defendants' contentions on the particularity of Plaintiff's securities fraud allegations focus on whether the harm suffered by Plaintiff—the rapid decline in value of his shares—was attributable to fraud. Defendants maintain that Plaintiff's allegations are merely "fraud by hindsight," *see Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978) (Friendly, J.),[10] and that Plaintiff fails to sufficiently plead facts which would afford a basis for believing that he could prove scienter.

Plaintiff addresses the scienter requirement in several paragraphs of his Complaint. In ¶ 11(b) of his Complaint, he alleges that:

---

**5.** Section 10(b) makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe . . ." 15 U.S.C. § 78j(b).

**6.** Rule 10b–5 provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device scheme or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

**7.** To state a claim for direct securities fraud under Rule 10b–5, a pleader must prove that the defendant:
1) made a misstatement or omission, 2) of material fact, 3) with scienter, 4) in connection with the purchase or sale of securities; 5) upon which the plaintiff relied; and 6) that reliance proximately caused the plaintiff's injury.
*See Stransky v. Cummins Engine Co., Inc., et al.*, 51 F.3d 1329, 1331 (7th Cir.1995); *Ernst & Ernst*

*v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); Thomas Lee Hazen, The Law of Securities Regulation § 13.2 (2d ed. 1990).

**8.** Scienter, as defined by the Supreme Court is the "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). The Seventh Circuit has noted that "the requirement of wrongful intent is satisfied by a showing of reckless conduct." *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1126 (7th Cir.1990).

**9.** Other circuits have set forth different requirements regarding the scienter requirement. *See Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir.1994) (complaint must set forth "specific facts that make it reasonable to believe that defendants knew that a statement was materially false or misleading); *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172–73 (2d Cir.1990) (plaintiffs must set out a factual basis which gives rise to a "strong inference of fraudulent intent"). *Cf. In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1547–49, 1554 (9th Cir.1994) (plaintiffs may aver scienter generally by saying that scienter existed).

**10.** In *Denny*, the Second Circuit noted, ". . . there still must be more than vague allegations that, as shown by subsequent developments, the corporation's true financial picture was not so bright in some respects as its annual reports had painted and that the defendants knew, or were reckless in failing to know, this."

The Officer/Director Defendants participated in the wrongdoing complained of herein in order to continue and prolong the illusion that the Company was financially sound and that its operations were healthy, to inflate the market prices of the common stock of the Company, and to conceal the adverse facts concerning the Company's business, management, services, financial condition and future prospects, so that they could protect and enhance their executive positions, the substantial compensation and prestige they obtained thereby and their existing direct and indirect equity ownership in Hurco.

Similarly, in ¶ 103 of his Complaint, Plaintiff alleges that:

The defendants participated in the alleged wrongdoing in order to continue and prolong the illusion of the continued growth and profitability of Hurco, to inflate the Company's publicly reported earnings, and to conceal the adverse facts concerning the financial condition and operations of Hurco so that they could: (i) protect their executive positions and the substantial compensation and prestige they obtained thereby; (ii) conceal and cover-up their own prior misconduct and disregard of their fiduciary duty to the Company's stockholders; (iii) satisfy their personal desires for aggrandizement and their desire to cause the Company to expand; and (iv) prevent deterioration in the value of their direct and/or beneficial ownership of Hurco shares.

Plaintiff's answer to the "why defraud" question can be summarized as follows: 1) to protect financial compensation; 2) to protect their individual positions and prestige; and 3) to cover-up their misconduct.

█ A recent Second Circuit opinion— *Acito v. Imcera Group, Inc.*, 47 F.3d 47, 53–54 (2d Cir.1995)—addressed whether scienter was properly pleaded where officers of a corporation had allegedly made false statements regarding future earnings and failed to disclose the negative results of the inspection of a manufacturing plant. The Court of Appeals affirmed the district court's dismissal of plaintiff's complaint and motion for leave to amend. In doing so, the Second Circuit noted:

Plaintiffs' allegation that defendants were motivated to defraud the public because an inflated stock price would increase their compensation is without merit. If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.... Therefore, we hold that the existence, without more, of executive compensation dependent upon stock value does not give rise to a strong inference of scienter.

Moreover, the Second Circuit reached its result even though one of the outside directors disposed of some of his stock. *See In re Apple Computer Sec. Litigation*, 886 F.2d 1109, 1117 (9th Cir.1989), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990) (unusual insider trading activity during class period may permit inference of bad faith and scienter).

In this case, Plaintiff does not allege that any of the officers or directors of Hurco sold their common stock during the relevant period, or in any way reaped profits before the stock's precipitous fall. We find the analysis of *Acito* persuasive even though the Seventh Circuit's test for scienter ("must still afford a basis for believing that plaintiff could prove scienter") is less stringent than the Second Circuit's "strong inference of fraudulent intent" test. Thus, Plaintiff's first reason—to protect the defendants' compensation—does not satisfy the scienter pleading requirements.

With regard to the second reason—protecting individual corporate positions—the Fifth Circuit in *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) rejected precisely such allegations in holding that scienter was not sufficiently pleaded. The complaint in that case alleged that the defendants acted "... for the purpose of ... preserving defendants' positions, perquisites and emoluments of office, securing, maintaining and/or increasing compensation for themselves, and/or inflating the value of their shares and options for shares of DSC." *Id.* The third reason given—cover-

ing up alleged misconduct—amounts to a conclusory assertion that Defendants conspired to inflate prices because they committed misconduct by not disclosing inventory problems and needed to conceal it.[11] Even were we to ignore the subsequent disclosures on the part of Defendants, the Court finds that the Plaintiff's allegations do not sufficiently plead scienter. The Court grants Defendants' motion to dismiss to dismiss the securities fraud claim under 9(b) and 12(b)(6).

### D. Particularity of Allegations Against C & L

■ For C & L to be held liable under securities fraud as primary violators, Stamatio must show that C & L, acting with scienter, either (1) misrepresented a material fact on which the plaintiffs relied, or (2) omitted a material fact and had a duty to plaintiffs not to omit that fact. *See Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir.1989); *Basic v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 983–84, 99 L.Ed.2d 194 (1988); Thomas Lee Hazen, The Law of Securities Regulation § 13.2 (2d ed. 1990).

■ C & L contends that Stamatio failed to plead the element of scienter with particularity. In *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir.1990), *cert. denied*, 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991), the Seventh Circuit affirmed the dismissal of a securities fraud complaint against an accounting firm. The court reasoned that:

'[i]f the plaintiff does not have direct evidence of scienter, the court should ask whether the fraud (or cover-up) was in the interest of the defendants. Did they gain by bilking the buyers of the securities?' *Barker* [*v. Henderson, Franklin, Starnes & Holt*], 797 F.2d [490] at 497 [ (7th Cir. 1986) ]. Here, as in *DiLeo*, there are no allegations that Arthur Young had anything to gain from any fraud by the primary violators. Although the amended complaint does allege that Arthur Young

received $90,000 for its services to DOC, this is not sufficient to support an inference of scienter. As we explained in *DiLeo*, an accounting firm's 'greatest asset is its reputation for honesty, followed closely by its reputation for careful work. Fees [an accounting firm receives for its services] ... could not approach the losses [the firm] ... would suffer from a perception that it would muffle a client's fraud.

In this case, the only allegations in Plaintiff's Complaint specifically addressing whether C & L met its scienter requirement are the following:

Defendant C & L, whose ex-employee defendant Campbell was Hurco's Chief Financial Officer during much of the Class Period, was responsible for the audits of Hurco during the Class Period and **was compensated** for performing such audits. Complaint, at ¶ 102(e). (emphasis added).

In addition, C & L was motivated by a desire to serve *its own financial interests* and those of defendants in that, among other things, C & L had been and expected to continue to be Hurco's regular auditors.

The Court finds that the above allegations are insufficient to satisfy the scienter requirements for securities fraud because several decisions have recognized that mere allegations that a defendant was financially compensated or desired to preserve his position with the company cannot be equated with fraudulent intent. *See Robin*, 915 F.2d at 1127; *DiLeo*, 901 F.2d at 629.

■ The Court next addresses whether Plaintiff satisfies the scienter requirement by alleging that C & L recklessly failed to disclose material information. A plaintiff adequately pleads recklessness if the alleged omission is:

a highly unreasonable omission involving not merely simply, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or

---

11. *See Kriendler v. Chemical Waste Management, Inc.*, 877 F.Supp. 1140 (N.D.Ill.1995) (issuer engaged in hazardous waste disposal did not commit securities fraud by not announcing the writedown of incinerator assets at the close of a calendar year, instead of making the announcement seven months later). The *Kriendler* court noted that "[t]iming, alone, cannot support an inference of fraud." *Id.* at 1154.

sellers that is either known to the defendant or so obvious that the actor must have been aware of it. *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977); *Renovitch v. Kaufman*, 905 F.2d 1040, 1046 (7th Cir.1990) (plaintiff can establish scienter by showing that defendant acted at least recklessly). Taking as true Plaintiff's allegations that C & L knew of the inventory problems prior to issuing its audit opinion dated January 15, 1993, we find that C & L's alleged failure to adequately disclose or rectify the improper inventory costing fails to satisfy the recklessness requirement. The allegations that C & L would have discovered the alleged omissions had they followed proper auditing standards constitute a negligence claim, not a securities fraud claim. The Court grants C & L's motion to dismiss the securities fraud claims for want of particularity.

### E. Control Person Liability

■ The Court next turns to the secondary liability of the Individual Defendants under Section 20(a) [12] of the Exchange Act [13]. We note initially that because Plaintiff has failed to state a primary securities fraud violation, his secondary liability claims fail as well. *See In re VeriFone Securities Litigation*, 11 F.3d 865, 870 n. 6 (9th Cir.1993). Even were we to have decided differently on the primary claims, Plaintiff's 20(a) claim fails for another reason. A complaint must inform each defendant of the specific nature

of his alleged participation in allegedly defrauding a plaintiff. *See Sears v. Likens*, 912 F.2d 889, 892 (7th Cir.1990). In *Sears*, the Seventh Circuit affirmed the district court's dismissal of plaintiff's complaint with prejudice because the complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity, how the alleged fraud was perpetrated, or when the allegedly fraudulent statements were made." *Id.* Instead, the Court found that the complaint "lumps all the defendants together and does not specify who was involved in what activity." *Id.*; *see also Warkel v. Cummins Engine Co., Inc.*, No. IP 90-428C, at 10-11 (S.D.Ind. Nov. 30, 1992) (Tinder, J.) (dismissing allegations attempting to impose liability on individual director defendants solely by virtue of their positions). The Court agrees with Defendants that Plaintiff's Complaint fails to inform each of the defendants of the specific fraudulent acts each has allegedly performed. Instead, Plaintiff's allegations lump all of the Hurco officers together, thus failing the specificity requirements of *Sears* and *Warkel*. The Court grants the Individual Defendants' motion to dismiss Count II based on Section 20(a).

### F. Common Law Fraud

■ With regard to the common law fraud [14] claim, because the Court finds that Plaintiff has failed to sufficiently plead his securities law claims under 10(b) and Rule 10b-5 against all Defendants, the Court holds that it has lacks supplemental jurisdiction

---

12. Section 20(a) of the 1934 Act provides:
   Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C. § 78t.

13. In *Donohoe v. Consolidated Operating & Production Corp.*, 30 F.3d 907, 911-12 (7th Cir. 1994), the Seventh Circuit restated its two-prong test for determining control person liability under § 20(a):
   First, the "control person" needs to have *actually* exercised general control over the operations of the wrongdoer, and second, the con-

trol person must have had the power or ability—even if not exercised—to control the specific transaction or activity that is alleged to give rise to liability.
   Here, Plaintiff sufficiently alleges both elements with particularity. *See* Complaint, at ¶ 11(a).

14. In order to prove a claim of fraud, Plaintiffs must show: 1) a material representation of past or existing facts; 2) which is false; 3) which was made with knowledge or reckless ignorance of its falsity; 4) which causes reliance to the detriment of the person relying on the representation. *See Knauf Fiber Glass, GmbH v. Stein*, 615 N.E.2d 115, 123 (Ind.App. 5 Dist.1993), *aff'd in part and rev'd in part on other grounds*, 622 N.E.2d 163 (Ind.1993); *Medtech Corp. v. Indiana Ins. Co.*, 555 N.E.2d 844, 847 (Ind.App. 1 Dist.1990).

over the fraud claim pursuant to 28 U.S.C. § 1367[15] and dismisses that claim without prejudice.

## III. CONCLUSION

For all of the above reasons, the Court grants Defendants' motions to dismiss Counts I and II with prejudice and dismisses Count III without prejudice.

It is so ORDERED.

---

**15.** See 28 U.S.C. § 1367(c)(3) (allowing district court to "decline to exercise supplemental jurisdiction" over pendent state-law claims if the court has dismissed all claims over which it has original jurisdiction); Wright v. Associated Insurance Companies, 29 F.3d 1244 (7th Cir.1994).