**HEALTHTRAC, INC., Plaintiff,**

v.

**Dennis SINCLAIR, Raymond Mol, et al., Defendants.**

No. C–02–5621 BZ.

United States District Court, N.D. California.

Jan. 23, 2004.

coverage for Margaret has been eliminated by her violation of the cooperation clause.

Daniel S. Frankston, Law Offices of Daniel Frankston, San Francisco, CA, C. Curtis Staropoli, Attorney at Law, Wilmington, DE, for Plaintiff.

Brooks Paterson Marshall, Edward Gartenberg Gartenberg, Thelen, Reid & Priest LLP, Los Angeles, CA, John Sherman Purcell, Quinn, Emanuel, Urguhart, Oliver & Hedges LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART MOTIONS TO DISMISS

ZIMMERMAN, United States Magistrate Judge.

Healthtrac, Inc., filed this action against three former officers and directors, Sinclair, Baillie and Mol, alleging that defendants misused the corporation's securities while they controlled it in violation of Federal and State law. Defendants Sinclair and Mol have now moved to dismiss plaintiff's Third Amended Complaint ("Third Complaint")[1] on the grounds that the claims brought pursuant to 15 U.S.C. § 78p ("Section 16") are time barred and the court should decline to exercise supplemental jurisdiction over the state claims.[2] Defendant Mol also moves to dismiss based on plaintiff's lack of capacity to sue. Mol motion, p. 5–7.[3]

*I. Plaintiff Has The Capacity to Sue Pursuant to Federal Rule of Civil Procedure 17(b).*

■ Defendant Mol argues that plaintiff lacks capacity to bring this action because it is either a suspended California corporation, or has not obtained a certificate pursuant to California Corporations Code § 2200, *et. seq.* As alleged in its complaint, however, plaintiff is a Canadian corporation and not a California corporation.[4]

1. By stipulation of the parties, the motion of defendant Baillie to dismiss, or in the alternative for a more definite statement, and motion for partial summary judgment was taken off calendar. At the hearing on January 7, 2004 the parties stipulated that any ruling dismissing Section 16 claims against Sinclair and Mol with regards to disclosed trades will operate as a dismissal of plaintiff's Section 16 claims against Baillie.

2. Sinclair also moved to strike plaintiff's Third Complaint based on plaintiff's failure to obtain leave to amend from the court pursuant to Federal Rule of Civil Procedure 15(a). By order dated December 8, 2003, I granted plaintiff leave to file the Third Complaint and ordered that the Third Complaint would be treated as the operative complaint. Therefore, **IT IS HEREBY ORDERED** that defendant Sinclair's motion to strike is **DENIED** as moot. Mol also moved in the alternative for a

more definite statement. Because I grant the motions to dismiss, defendant Mol's motion for a more definite statement is **DENIED** as moot.

3. Healthtrac, Inc. and defendants Sinclair, Mol and Baillie consented to my jurisdiction pursuant to 28 U.S.C. § 636(c).

4. On a motion to dismiss, the court must accept as true the factual allegations in the complaint. *See Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996). Defendants Sinclair and Mol proffered no evidence of which I can take judicial notice to the contrary. Although John Purcell attaches an exhibit to his declaration reflecting the corporate status of a California corporation known as "Healthtrac, Inc.", his declaration does not establish that it is the same corporation as plaintiff.

Third Complaint, ¶ 4. Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Fed. R.Civ.P. 17(b); *Joseph Muller Corp. Zurich v. Societe Anonyme de Gerance et D'Armement*, 451 F.2d 727, 729 (2d. Cir. 1971) (stating that because corporations had capacity to sue where they were incorporated-France and Switzerland, respectively-they had capacity to sue in federal courts pursuant to Rule 17(b)...). Defendant Mol fails to cite any Canadian authority suggesting that plaintiff lacks capacity to sue in federal court here. Absent such authority, this argument is rejected.

## II. The Statute of Limitations Bars Plaintiff's Section 16 Claims with respect to Disclosed Trades.

The Third Complaint alleges violations of Section 16 involving both disclosed and undisclosed trades. Third Complaint, ¶ 75–78, 79–83. The allegations involving undisclosed violations of Section 16 are directed against defendant Sinclair only.

■ With respect to the disclosed trades, Sinclair and Mol argue that plaintiff's claim for recovery of short-swing profits[5] pursuant to Section 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78p(b), is time-barred and should be dismissed. *See* 15 U.S.C. § 78p(b) (stating that "[s]uit to recover such profit may be instituted...by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer...but no suit shall be brought more than two years after the date such profit was realized"). According to the Third Complaint, Sinclair reported his last short-swing transaction on October 27, 2000, and Mol reported his last short-swing transaction on June 14, 2000.[6] Third Complaint, ¶ 75(a)-(e). Plaintiff filed its complaint on November 27, 2002, one month after the statute of limitations had run on the last reported transaction.

■ Plaintiff does not dispute its late filing. Instead, plaintiff urges the court to toll the statute of limitations under the doctrine of "adverse domination", or "other applicable equitable principles".[7] Opp. 4. In certain situations, application of the adverse domination doctrine tolls the statute of limitations for a corporation's cause of action against its directors while the directors control the corporation. *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 879 (9th Cir.1984) (adverse domination may toll statute of limitations in an action for fraud and related state law violations where a plaintiff can "show full, complete

---

**5.** Short-swing profits refers to the profits realized from "any purchase and sale, or any sale and purchase, of any equity security of [an] issuer (other than an exempted security) within any period of less than six months" by a director, officer, or beneficial owner of more than 10% of any class of any equity security. *See* 15 U.S.C. § 78p(b).

**6.** Section 16(a) requires directors, officers, and beneficial owners to disclose any changes in ownership "within ten days after the close of each calendar month thereafter." 15 U.S.C. § 78p(a). The disclosure pursuant to § 16(a) (the "16(a) report") is filed with the Securities and Exchange Commission ("SEC") and "sets forth the insider's name, the date of the transaction, the number of shares sold or bought and the price per share." *Tristar Corp. v. Freitas*, 84 F.3d 550, 553 (2d Cir.1996). Any shareholder may examine the disclosures and "determine easily and quickly" whether an insider has profited from a short-swing transaction. *Id.; Donoghue v. American Skiing Co.*, 155 F.Supp.2d 70, 75–76 (S.D.N.Y.2001).

**7.** These other principles are never identified other than in general, conclusory terms. The court has found no equitable tolling principle, other than adverse domination, which appears to apply to plaintiff's Section 16(b) claim.

and exclusive control in the directors or officers charged," by "effectively negating the possibility that an informed stockholder or director could have induced the corporation to sue.").

Plaintiff cites no authority, and the court can find none, applying adverse domination or other equitable principles to toll the statute of limitations where an insider promptly files the required 16(a) reports. Whether to apply the adverse domination doctrine to toll the statute of limitations turns on whether tolling would further the legislative intent in enacting Section 16(b). *Whittaker v. Whittaker Corp.*, 639 F.2d 516, 527 (9th Cir.1981) *citing American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 559, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Because both the language of Section 16(b) and the legislative history are silent with regard to equitable tolling, courts look to the general legislative purpose behind Section 16. *Id.* at 527–28. That statute imposes strict liability for any insider trade and may be enforced by the corporation or by any shareholder on behalf of the corporation. Accordingly, where an insider failed to file the required reports disclosing short-swing trades, the Ninth Circuit applied principles of equitable tolling and held that the two-year limitations period contained in Section 16(b) "begins to run when the transactions are disclosed in the insider's Section 16(a) report." *Whittaker*, 639 F.2d at 530; *accord Blau v. Albert*, 157 F.Supp. 816, 817–19 (S.D.N.Y.1957) (noting that "[i]t would be a

simple matter for the unscrupulous to avoid the salutary effect of Section 16(b) which provides a remedy for the recovery of short-term profits, simply by failing to file monthly reports in violation of subdivision (a) and thereby concealing from prospective plaintiffs the information they would need to adequately protect their interest. Such a construction would reward the violation of the statute and would manifestly frustrate congressional intent"); *Grossman v. Young*, 72 F.Supp. 375, 380 (S.D.N.Y.1947).[8]

The holding in *Whittaker*, however, does not help plaintiff, and actually helps defendants, since it is undisputed that the 16(a) reports were timely filed and the statute of limitations has already run. And unlike in *Whittaker*, *Grossman* and *Blau*, equitable tolling is not necessary to effectuate Section 16(b) in this case. Defendant Sinclair and Mol's Section 16(a) reports provided constructive notice of the short-swing trades, enabling any shareholder or the corporation to commence an action to recover the short-swing profits. In fact, a shareholder, Samuel Chambers, submitted two written demands to Healthtrac, Inc. requesting that it "redress certain violations of Section 16 and return profits realized" to the corporation. Third Complaint 25:8–10. After the corporation failed to take any action, Mr. Chambers filed lawsuits in 2001 against Sinclair and Mol, and in 2002 against Sinclair, Mol and Baillie (the "Chambers lawsuits") seeking to recover precisely the same short-swing profits at issue in this case.[9] Third Complaint,

---

**8.** Courts have refused to equitably toll the statute of limitations for claims pursuant to 15 U.S.C. § 77l(1) ("Section 12(1)"), which renders a person or entity liable for selling, without registration, a security that the Act requires be registered. *See In re Rexplore, Inc. Securities Litigation*, 671 F.Supp. 679, 685 (N.D.Cal.1987) (stating that "since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine

to a claim brought for failure to register securities").

**9.** Plaintiff attempts unsuccessfully to downplay the significance of the Chambers lawsuits by claiming that they were "poorly pleaded, filed *pro se*, and...essentially still-born". *See* Third Complaint, ¶ 76. Plaintiffs also challenge Chambers' motivations in bringing the lawsuits, and Sinclair's efforts to defend the Chambers' lawsuits. Opposition, p. 12–13. None of these arguments are in any way rele-

¶ 67–74. A review of Healthtrac and its predecessor's Annual Reports filed with the Securities and Exchange Commission reveals that during 2000, there were three "Executive Officers" other than Sinclair and Baillie on Healthtrac's Board; Kevin Wielgus, Grayson Hand, and Greg Burnett, and that Pierre Prefontaine has been on the Board since at least April 2000 and is a member of the Board that authorized this suit. *See* Healthtrac Annual Reports filed June 13, 2003, June 13, 2002, May 29, 2001, June 6, 2000, and Quarterly Report dated October 17, 2000 *available at http://www.sec.gov.* Plaintiff fails to explain what, if any, obstacles prevented any of these officers or directors from bringing a timely Section 16 claim against any of the defendants. Their presence along with the Chambers lawsuits, however flawed they allegedly were, undermine plaintiff's argument that equitable tolling is necessary because it was impossible for anyone to bring a Section 16 action within the two-year period. Plaintiff cites no case in which a shareholder brought an action on behalf of the corporation and the court nevertheless equitably tolled the statute of limitations when the corporation sued.[10]

It is clear that the legislature intended to curb insider trading abuses by requiring that all short-swing trades be disclosed and providing for strict liability. Applying adverse domination as proposed by plaintiff could conceivably undermine this intent. One incentive insiders have to file 16(a) reports is the certainty that any liability flowing from the short-swing trade will extinguish after two years. Section 16 provides no such protection to the insider who fails to disclose because the statute is tolled and any liability risk is potentially indefinite. *Whittaker,* 639 F.2d at 530. If adverse domination were to toll the statute of limitations even where there was proper disclosure, many insiders would be exposed to the same open-ended risk regardless of whether they reported. The "unscrupulous" insider might conclude that he is willing to risk the chance that the short-swing trade will not be revealed and not file his 16(a) report. This cannot be the result intended by Congress.

*III. The Statute of Limitations Bars Plaintiff's Section 16 Claims with respect to Undisclosed Trades.*

 Plaintiff alleges that in or about February 19, 1999, Sinclair "committed undisclosed violations, for which [he] has not accounted to [plaintiff] or its shareholders." [11] Third Complaint, ¶¶ 79–80. Plaintiff bases its allegations on a Form 144, Notice of Proposed Sale of Securities, that states Sinclair intends to sell 4 million shares that were acquired on dates plaintiff believes are false. *Id.* Plaintiff is unable to determine whether Sinclair sold the 4 millions shares, and if so, whether he was required to file a Section 16 report disclosing a short-swing trade.

vant to the determination of whether it is appropriate to apply equitable principles or adverse domination to toll the statute of limitations. The significance of the Chambers lawsuits is not the relative strength or success, but the mere fact that they were filed. Plaintiff also ignores the remaining 37,000 shareholders that could have brought an action pursuant to Section 16.

10. This is not surprising considering that application of equitable tolling principles gener-

ally requires showing "a full, complete and exclusive control in the directors or officers charged" such that a shareholder could not initiate an action. *International Railways of Central America v. United Fruit Company,* 373 F.2d 408, 415 (2nd Cir.1967).

11. Although the Third Complaint refers to undisclosed trades by "Defendants", these allegations refer only to Sinclair, and not Mol or Baillie.

Defendant Sinclair argues this claim should be dismissed for failure to comply with both the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure, both of which impose a heightened pleading standard for cases involving fraud. *See* 15 U.S.C. § 78u–4(b)(2); Fed.R.Civ.P. 9(b). In addition, if plaintiff's claim is controlled by the PSLRA, a stay of discovery would be imposed pending defendants' motions to dismiss.

Without discussing whether the PSLRA applies to plaintiff's claim for undisclosed violations of Section 16 or whether Section 16 claims must satisfy Rule 9(b), I find that the allegations in paragraphs 79 and 80 of the Third Complaint are sufficiently detailed to state a claim against Sinclair. The allegations identify a specific date around which Sinclair purportedly sold the four million shares. The Third Complaint does not make vague claims against un-identified defendants for undetermined acts.[12]

For the foregoing reasons, **IT IS HEREBY ORDERED** that the motions of Sinclair and Mol to dismiss plaintiff's Section 16 claims with respect to disclosed trades are **GRANTED** on the grounds that the claims against them are time-barred.[13] By stipulation of the parties, this ruling also operates to dismiss Section 16 claims against defendant Baillie.

**IT IS FURTHER ORDERED** that defendant Sinclair's motion to dismiss plaintiff's claims with respect to undisclosed trades alleged in paragraphs 79 and 80 of the Third Complaint is **DENIED**. Plaintiff and defendant Sinclair must complete initial disclosures with respect to this claim no later than **February 6, 2004**. All other discovery is stayed pending a case management conference that is scheduled for **Monday, February 23, 2004 at 4:00 p.m.**

**IT IS FURTHER ORDERED** that the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims against Mol and Baillie and they are **DISMISSED WITHOUT PREJUDICE**. Pursuant to 28 U.S.C. § 1367, plaintiff may re-file its state law claims in the proper state court within thirty days. Defendant Sinclair's motion to dismiss plaintiff's state law claims is taken under submission.

---

**12.** These allegations are very different from those in *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990), the only case cited by Sinclair supporting his argument that plaintiff is held to a higher pleading requirement under Section 16 claims. In *Sears*, the court dismissed claims under Sections 16(a), 20 and 10b–5 for lack of particularity under Rule 9(b). In *Sears*, the court determined that the pleadings failed to satisfy Rule 9(b)'s pleading requirements because "the [p]laintiffs fail to state in any detail *what* misrepresentations were made by the defendant, *to whom* these representations were made, *when* these misrepresentations were made, or *how* these misrepresentations furthered the alleged fraudulent scheme." (emphasis in original)

**13.** This Order does not rule on the applicability of the doctrine of adverse domination, or any other equitable principles, to toll the statute of limitations for the remaining state law claims.