CASEY NATIONAL BANK, Plaintiff-Appellee, v. WILLIAM R. ROAN *et al.*, Defendants-Appellants.

Fourth District    No. 4—95—0777

---

Argued May 14, 1996.—Opinion filed July 19, 1996.

56

James F. Jarrett (argued), of Schniederjon, Weber & Jarrett, of Effingham, for appellants.

William A. Sunderman and Kristin L. Wilson (argued), both of Brainard, Bower & Kramer, of Charleston, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff brought an action seeking to set aside a transfer of property based on a fraudulent conveyance and to impose a judgment lien against the property. Defendants appeal, alleging the trial court erred in finding (1) a fraudulent conveyance of the property, and (2) that the property was subject to a lien based on a judgment which had been discharged in bankruptcy. We affirm.

On December 30, 1982, defendant, William Roan executed a promissory note for $65,000 in favor of plaintiff, Casey National Bank (Bank). Defendant Rosalee Roan had previously signed an agreement to be a responsible party on any and all notes executed by her husband William. The note was secured by a 1974 combine and other farm equipment and the combine was insured for actual cash value rather than replacement cost. The combine was destroyed by fire one month before the note became due on November 30, 1983. When the note fell due it was not paid and the Bank's vice-president had several conversations with William regarding the need to refinance the loan by a suggested mortgage of William's unencumbered farmland. William then owned a one-half interest in 25 acres of unencumbered farmland known as the homestead and a one-half interest in 60 acres of unencumbered farmland in Clark County. Rosalee owned the other one-half interest in each of these parcels. In addition, they jointly owned an interest in 40 acres of farmland which was mortgaged to the Bank.

On February 29, 1984, the Bank sent William and Rosalee a letter informing them that the note was 90 days past due and the balance of $74,004.13 would have to be paid in full. On March 12, 1984, William informed the Bank's vice-president that he would not sign a mortgage on his unencumbered land and he made no payment on the delinquency. The following day, William transferred his one-half interest in the 60-acre farmland to his daughter, defendant Kathy Sue Logan. On March 14, 1984, William transferred his one-half interest in the 25-acre homestead to his son, defendant Roger Roan.

On March 21, 1984, the Bank filed a complaint on the note in the circuit court of Clark County against both William and Rosalee in cause No. 84—L—9. During the course of these proceedings, on October 1, 1984, Rosalee transferred her one-half interest in both the 60-acre and 25-acre parcels to defendants Roger and Kathy. Judgment was entered in favor of the Bank on January 7, 1985, in the sum of $83,573.81 and recorded in the office of the recorder of deeds of Clark County on January 11, 1985. On April 15, 1985, the Bank filed its complaint in the instant action seeking to have the conveyances declared null and void as to it and its judgment imposed as a lien against the property.

On February 19, 1991, William and Rosalee filed a petition for chapter 7 bankruptcy listing as creditors holding security the Bank's judgment in case No. 84—L—9, and as an unsecured disputed claim the instant suit in equity. There were no other creditors listed. In July 1992 the bankruptcy court entered orders providing that the bankruptcy proceeding had no effect on the instant action pending in the circuit court and approving the trustee's report for distribution of $28,056.35 of the insurance proceeds to the Bank. On January 18, 1993, the bankruptcy court entered its final decree and discharge.

In December 1993, defendants filed a motion for summary judgment in the circuit court asserting, in essence, that the bankruptcy court's compromise and discharge of the underlying claim barred the current action. The circuit court denied the motion for summary judgment making the following relevant findings: (1) the Bank's judgment, which was recorded in January 1985, became a lien on all real estate of the defendants; (2) the transfers of the subject property occurred in March 1984 and October 1984; (3) pursuant to section 506(d) of the Bankruptcy Code (Code) (11 U.S.C. § 506(d) (1988)), the Bank's lien passed through the bankruptcy case unaffected; (4) pursuant to section 524 of the Code (11 U.S.C. § 524 (1988)) a discharge operates as an injunction against the continuation of an action to collect a debt as a personal liability of the debtor but does not enjoin the *in rem* enforcement of a valid lien; (5) pursuant to section 727(a)(2) of the Code (11 U.S.C. § 727(a)(2) (1988)), the bankruptcy court may deny a discharge where the debtor, with intent to hinder, delay, or defraud a creditor, has transferred property of the debtor within one year prior to the filing of the petition; and (6) the bankruptcy court's order by its own language provided that there was no effect on the pending circuit court case.

On May 10, 1995, the circuit court entered a memorandum opinion finding that (1) the conveyances by William and Rosalee to their children were made without valuable consideration immediately following the Bank's request for refinancing of the indebtedness in lieu of filing suit; (2) Roger and Kathy were aware of their parents' financial problems; (3) William and Rosalee were insolvent or became so as the result of the transfers of real property; and (4) the conveyances made by William and Rosalee would be set aside as between the parties to the proceedings. On May 24, 1995, an order was entered incorporating those findings and final judgment was entered in favor of plaintiff providing that the conveyances were null and void as to the Bank and subject to a judgment lien arising by virtue of the judgment recorded in January 1985. The court also denied the defendants' subsequent motion for reconsideration.

■ Section 4 of the statute relating to frauds provides:

"Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, *** made with the intent to disturb, delay, hinder or defraud creditors or other persons, *** shall be void as against such creditors, purchasers and other persons." Ill. Rev. Stat. 1985, ch. 59, par. 4.

■ Illinois courts have divided fraudulent conveyance cases into the categories of fraud in fact and fraud in law. Proof of fraud in fact requires a showing of an actual intent to hinder creditors, while fraud in law presumes a fraudulent intent when a voluntary transfer is made for no or inadequate consideration and directly impairs the rights of creditors. *Reagan v. Baird*, 140 Ill. App. 3d 58, 64-65, 487 N.E.2d 1028, 1033-34 (1985); *Anderson v. Ferris*, 128 Ill. App. 3d 149, 152-53, 470 N.E.2d 518, 521 (1984). Fraud in law requires proof of (1) a voluntary transfer for inadequate consideration, (2) an existing indebtedness against the donor, and (3) retention by the donor of insufficient property to satisfy the indebtedness. *Mills v. Susanka*, 394 Ill. 439, 448, 68 N.E.2d 904, 908-09 (1946); *Effingham State Bank v. Blades*, 139 Ill. App. 3d 259, 263, 487 N.E.2d 431, 435 (1985).

■ Defendants argue that the court erred in finding a fraudulent conveyance occurred because the Bank failed to prove William and Rosalee transferred the land with the intent to defraud it and failed to prove William and Rosalee were insolvent as a result of the transfer. While the Bank was not required to show intent if it proved the elements for fraud in law, there was nevertheless considerable evidence demonstrating fraudulent intent. William knew for over three months prior to the transfers that his promissory note was delinquent and the Bank was pressing him to refinance the loan by mortgaging his interest in the two parcels of farmland. In the two days following the Bank's final demand for payment or refinancing in lieu of filing a lawsuit, William transferred all his interest in the unencumbered property to his children for a *de minimis* consideration of $10 on each of the deeds. Rosalee transferred all her interest in the unencumbered property to her children for similar consideration during the course of the court proceedings instituted by the Bank to obtain judgment on the note. As to the issue of William's and Rosalee's solvency at the time of transfer, defendants cite testimony of the Bank's vice-president that the insurance policy on the combine was sufficient for the Bank and William's testimony that he believed the policy was sufficient to pay the Bank in full. However, defendants produced no evidence that the insurance proceeds were sufficient to pay the entire indebtedness on the note. In fact, the proceeds from that policy paid into the bankruptcy court were no more than

$35,000, from which expenses and fees were deducted. None of the parties dispute that following the transfer, William and Rosalee retained only personal property of little value. The fact that William and Rosalee testified the transfers were made only for purposes of estate planning does not establish that the trial court's finding the conveyances were fraudulent as to the Bank was against the manifest weight of the evidence. The Bank produced sufficient evidence to show fraud in law—a voluntary transfer for inadequate consideration, an existing indebtedness of the donors, and retention by the donors of insufficient property to satisfy the indebtedness—and the circuit court's judgment setting aside the conveyances as to the Bank was not against the manifest weight of the evidence.

However, a finding that the conveyances were fraudulent does not address the question of whether there continued to exist any indebtedness due the Bank which might be levied against the property following the discharge of the Bank's judgment in William's and Rosalee's bankruptcy action. The circuit court expressly found that the Bank's judgment, recorded in January 1985, then became a lien on all real estate of the defendants, even though no legal title remained in William and Rosalee following the transfer to their children in 1984.

Defendants argue that since the indebtedness owing to the Bank was compromised and discharged by the bankruptcy court, no debt remained which could now be imposed as a lien against the property conveyed. The Bank argues, and the trial court so found, that the debt attached as a lien on the conveyed property from the date the Bank recorded its judgment on January 11, 1985. The Bank points out that section 524(a)(2) of the Code (11 U.S.C. § 524(a)(2) (1988)) provides that a discharge operates as an injunction against the continuation of an action to collect any debt as a personal liability of the debtors but does not enjoin the enforcement of a valid lien, which survives the bankruptcy case unaltered under section 506(d) of the Code (11 U.S.C. § 506(d) (1988)). See *In re Grimes*, 6 Bankr. 943 (D. Kan. 1980); *In re Sillani*, 9 Bankr. 188, 189 (S.D. Fla. 1981). Creditors holding unavoided liens have the right to exercise their *in rem* rights against the property securing the lien after the granting of a discharge. *In re Endlich*, 47 Bankr. 802, 805 (E.D.N.Y. 1985). While these assertions on the survival of liens post-bankruptcy are generally accurate statements of the law, they assume the existence of a valid lien, and in this case no valid lien existed at the time William and Rosalee filed for bankruptcy.

■ A judgment becomes a lien on the real estate of the person against whom it is entered only from the time the judgment is filed

in the office of the recorder of deeds in the county in which the real estate is located. See Ill. Rev. Stat. 1985, ch. 110, par. 12—101; *Cochran v. Cutler*, 39 Ill. App. 3d 602, 607, 350 N.E.2d 59, 62 (1976). In this case, although the Bank filed its judgment against William and Rosalee in the county in which the property was located in January 1985, the property had already been conveyed to the parties' children during transfers made in 1984.

> "[I]t is the settled law of this State that a judgment is not a lien on real estate which the judgment debtor, before the rendition of the judgment, had conveyed away to defraud his creditors, the doctrine being that as between parties to it the conveyance is valid and binding and no interest, legal or equitable, remains in the grantor upon which the lien can rest." *DeMartini v. DeMartini*, 385 Ill. 128, 133, 52 N.E.2d 138, 140 (1943).

See also *Union National Bank v. Lane*, 177 Ill. 171, 174, 52 N.E. 361, 362 (1898).

Therefore, at the time of William and Rosalee's discharge by the bankruptcy court no lien existed which could have passed through those proceedings. The judgment was nothing more than a preexisting debt unsecured to the extent of the deficiency in the insurance proceeds and was therefore dischargeable in bankruptcy. Pursuant to section 727(b) of the Code, a discharge in bankruptcy "discharges the debtor from all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b) (1988); see also *Grimes*, 6 Bankr. at 946. The purpose of a chapter 7 bankruptcy proceeding "is for a debtor to obtain a fresh start free from creditor harassment and free from the worries and pressures of too much debt." *In re Williams*, 7 Bankr. 234, 236 (M.D. Ga. 1980). "The effect of release from the judgment debt is to extinguish the judgment. The judgment itself is void." *In re Duncan*, 60 Bankr. 345, 348 (M.D. Ala. 1986).

Defendants argue that the Bank could have taken the matter up in the bankruptcy court by objecting to the discharge but instead did nothing and thus is barred from imposing a lien for a debt which has been discharged. This assertion is not factually correct. The record indicates the Bank did attempt to bring an adversary proceeding in the bankruptcy court to have a determination rendered on the fraudulent conveyances. This method is permissible under section 544(b) of the Code (11 U.S.C. § 544(b) (1988)), and the bankruptcy court was required to apply the substantive provisions of Illinois' fraudulent transfer laws. See *In re Lyons*, 130 Bankr. 272, 278 (N.D. Ill. 1991). However, the bankruptcy order dismissing that adversary proceeding indicates that the statute of limitations barred the trustee from bringing such an action in the bankruptcy court. While the trustee has

the exclusive right to pursue fraudulently conveyed assets pursuant to section 546(a) of the Code once bankruptcy has been initiated (11 U.S.C. § 546(a) (1988)), the trustee loses that right and creditors may step in once the trustee no longer has a viable cause of action (in this case because the statute of limitations for initiating a cause for fraudulent conveyance had expired as to the trustee). See *Klingman v. Levinson*, 158 Bankr. 109, 113 (N.D. Ill. 1993). The question must then be asked—what is the effect of the discharge and the bankruptcy court's finding that its order had "no effect" on the proceedings in this state-court action, which was initiated by the Bank in April 1985? None of the cases cited by the parties are relevant to this question since all relate to liens established or denied prior to or within the context of the bankruptcy proceedings. Here, of course, no such lien existed either prior to or during the pendency of the bankruptcy proceedings.

■ Independent research has revealed two cases which are applicable to the facts here. In *Kathy B. Enterprises, Inc. v. United States*, 779 F.2d 1413 (9th Cir. 1986), the Illinois taxpayer in 1979 transferred his Illinois accounting practice and assets to Kathy B. Enterprises, Inc. (Kathy B.), an entity which had never engaged in the accounting business and whose sole stockholder lived with the taxpayer debtor. The next day, Kathy B. sold the accounting business and the taxpayer eventually began to conduct an accounting practice through Kathy B. in Arizona. When the Internal Revenue Service (IRS) in 1980 assessed back taxes against the taxpayer, he filed for bankruptcy and was granted a discharge by the bankruptcy court. The IRS levied against Kathy B.'s Arizona bank account, arguing the transfer had been fraudulent under Illinois law. In affirming the district court's denial of the injunction sought by Kathy B. against the IRS, the court of appeals recognized that "discharged" debts remain viable despite being unenforceable against the debtor based on provisions regulating discharge in section 524(e) of the Code:

> "Except as provided in subsection (a)(3) of this section [dealing with claims against community property], discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e) (1988).

The court of appeals found this language dispositive of Kathy B.'s claim and that entity was deemed liable for the debt as a fraudulent transferee of the assets of the taxpayer. *Kathy B.*, 779 F.2d at 1414-15.

In *Dixon v. Bennett*, 72 Md. App. 620, 531 A.2d 1318 (1987), the debtor fraudulently transferred his assets to other entities prior to

filing for bankruptcy, in which proceeding he received a discharge. Following expiration of the federal limitation period in which the trustee had the exclusive right to sue to avoid the fraudulent transfer, the creditor brought suit in state court against the transferee of the assets under Maryland's fraudulent conveyance statute whose limitations period had not yet expired. In reversing the trial court's conclusion that the creditor was precluded from suing to set aside a fraudulent conveyance subsequent to the debtor's discharge in bankruptcy, the reviewing court held:

> "The discharge provision of the Bankruptcy Code, 11 U.S.C. § 524, consistent with fundamental bankruptcy policy, provides the debtor with a fresh start free from the burdens of preexisting liabilities. Under § 524, the discharge only (i) extinguishes *personal* liability of the *debtor*; and (ii) prevents creditors whose claims arose pre-bankruptcy from any actions to impose *personal* liability on the *debtor*. 11 U.S.C. § 524 (1978). Section 524(e) expressly provides that the 'discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.' " (Emphasis in original.) *Dixon*, 72 Md. App. at 637, 531 A.2d at 1326.

The *Dixon* court found section 524(e) of the Code reflected a congressional intent to preserve the rights of creditors to pursue their causes of action against third parties, restricting the affect of a discharge solely to a release of the personal liability of the debtor. *Dixon*, 72 Md. App. at 637, 531 A.2d at 1326. The court concluded that the creditor there had not sought to impose personal liability on the debtor but had brought her cause of action against the fraudulent transferee, precisely the type of claim contemplated by section 524(e) of the Code. *Dixon*, 72 Md. App. at 637-38, 531 A.2d at 1327.

■ The same scenario applies in the case at bar. The trial court's action in finding the conveyances null and void as to the Bank was correct, although its rationale for doing so (a valid lien which passed through bankruptcy) was not. A court of review is not bound to accept the reasons given by the trial court for its decision but may affirm the judgment upon any ground supported by the record, regardless of whether the circuit court relied on such ground, and regardless of whether the reasons given by the trial court were correct. *Messenger v. Edgar*, 157 Ill. 2d 162, 177, 623 N.E.2d 310, 317 (1993). The transfer here is void as to the Bank. The conveyance is not set aside as between Kathy and Roger and their parents. The Bank is entitled to impose its lien against the property fraudulently conveyed to third parties, in this case, Kathy and Roger, the fraudulent transferees. *DeMartini*, 385 Ill. at 134, 52 N.E.2d at 141.

64

The circuit court's May 10, 1995, memorandum of judgment noted that ancillary issues remained pending for resolution prior to commencement of any foreclosure proceedings against the subject property. Those issues include proceeds from the sale of personal property held by the circuit clerk of Clark County and claims of reimbursement for improvements made to the transferred real estate by Kathy and Roger. Therefore, this court affirms the judgment of the circuit court and remands for determination of these matters.

Affirmed and remanded.

COOK, P.J., and GARMAN, J., concur.