124 F.3d 206
 80 A.F.T.R.2d 97-6066, 97-2 USTC P 50,677
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas P. SHERIDAN and Diane M. Sheridan, Defendants-Appellants.
 No. 96-3804.
 United States Court of Appeals, Seventh Circuit.
 Submitted August 21, 1997*
Decided August 21, 1997.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 95 C 1848; Brian Barnett Duff, Judge.
 Before Hon. CUMMINGS, BAUER and WOOD, Circuit Judges.
 
 ORDER
 
 1
 Thomas Sheridan decided that federal income taxes are voluntary, and so, beginning in 1979, he stopped filing complete federal tax returns or paying income taxes. The IRS made annual tax and penalty assessments against Sheridan from 1981 through 1993. Sheridan refused to pay the assessments, and in March 1995 the United States commenced this civil action against him to reduce to a judgment more than $230,000 in taxes and penalties that he owed. (As of October 1996, Sheridan's debt had increased to more than $250,000.) The government also named as a defendant Sheridan's wife, Diane, and sought a judgment setting aside as fraudulent Sheridan's 1985 conveyance of his interest in his house to Diane for $2.00. Finally, the government sought the-foreclosure of various tax liens on Sheridan's house and its judicial sale.
 
 
 2
 After this suit was commenced, the Sheridans ignored the government's requests for discovery, though the Sheridans claim that the government did not properly serve various discovery requests upon them. In any case, the government moved for an order compelling the Sheridans to respond to its discovery requests. The Sheridans still refused to cooperate with discovery, and the government moved for and was granted a default judgment. The court later vacated the default judgment, apparently either because the Sheridans had begun to cooperate with discovery, or because they had agreed to do so in the future.
 
 
 3
 Discovery proceeded, the government moved for summary judgment, and the Sheridans responded. In September 1996, the district court granted summary judgment in favor of the United States. The court entered judgment against Mr. Sheridan for the amount of $259,642.96. The court ruled that Mr. Sheridan's purported transfer of his interest in his home to his wife was fraudulent under state law, and that Mr. Sheridan therefore retained his interest in the property. Finally, the court ordered the foreclosure of the tax liens and the sale of the house. This appeal followed.
 
 
 4
 The Sheridans' appellate brief consists largely of personal attacks and accusations against the district court judge and the government attorneys who litigated this case before the district court and this court. Such ad hominem attacks are wholly inappropriate and completely unfounded
 
 
 5
 Beside personal attacks, the Sheridans' appellate brief contains only baseless factual assertions and erroneous legal conclusions, it is devoid of any citations to authorities, statutes or parts of the record relied upon. See Fed.R.App.P. 28(a)(6). Accordingly, they have failed to preserve any argument for appellate review. See Gagan v. American Cablevision, Inc., 77 F.3d 951, 965 (7th Cir.1996) (failure to cite any factual or legal basis for an argument waives it); Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 173 n. 1 (7th Cir.1996) (argument that is not developed in any meaningful way is waived); Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, Benefits Review Bd., 957 F.2d 302, 305 (7th Cir.1992) ("[W]e have no obligation to consider an issue that is merely raised on appeal, but not developed in a party's brief"); United States v. Haddon, 927 F.2d 942, 956 (7th Cir.1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim [for appellate review].").
 
 
 6
 Even if we were to consider the Sheridans' arguments, however, they are utterly meritless. Their principal argument is that the district court terminated the case in their favor and eliminated any underlying debt they owed to the United States when it vacated the default judgment it had previously entered against them. According to the Sheridans, "[w]hen the 'so called' judgment was vacated[,] so was the so called or assumed debt to the United States. [The government] never legally re-opened the case...." This assertion is simply wrong. The district court's vacation of the default judgment against the Sheridans was not a judgment in their favor. Rather, the vacation merely relieved them from the judgment that had been entered against them, see Fed.R.Civ.P. 55(c), 60(b), and afterward, the case properly proceeded. See McCall-Bey v. Franzen, 777 F.2d 1178, 1186 (7th Cir.1985) (effect of vacation of default judgment is to restore case to trial calendar); see also Thompson v. American Home Assurance Co., 95 F.3d 429, 434 (6th Cir.1996) (same); Civic Center Square, Inc. v. Ford ( In re Roxford Foods, Inc.), 12 F.3d 875, 881 (9th Cir.1993) (same); Joseph v. Office of Consulate General of Nigeria, 830 F.2d 1018, 1028 (9th Cir.1987) (same), cert. denied, 485 U.S. 905 (1988). Thus, the government did not need to "re-open" the case because it was never "closed."
 
 
 7
 The Sheridans next argue that the district court denied them their Seventh Amendment right to a jury trial when it granted summary judgment in favor of the government. However, it has long been held that resolution of a case on summary judgment does not violate the Seventh Amendment. Fidelity & Deposit Co. v. United States, 187 U.S. 315, 319-21 (1902); United States v. Strangland, 242 F.2d 843, 848 (7th Cir.1957). The Sheridans do not direct our attention to any genuine questions of material fact which should have precluded summary judgment, and thus, the district court properly granted summary judgment in favor of the government. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 8
 The Sheridans also submit that they were misinformed as to the dates of various status hearings and that the government failed timely to serve them with certain discovery requests. Even if these claims are true, the Sheridans fail to allege that they suffered any prejudice from these errors. All of the alleged errors of which the Sheridans complain occurred before the district court granted the default judgment in favor of the government. Accordingly, any such errors were cured when the court vacated that judgment. The Sheridans do not claim that they were denied notice of the government's motion for summary judgment, or that they were denied the opportunity to respond. Because none of the errors of which the Sheridans complain in any way prejudiced them, they do not state a ground for reversal. Fed.R.Civ.P. 61; Kwasny v. United States, 823 F.2d 194, 196 (7th Cir.1987).
 
 
 9
 The Sheridans' final argument is that Mr. Sheridan's transfer of his interest in his home to his wife was a valid conveyance, and that their house is therefore not subject to seizure and sale to satisfy Mr. Sheridan's tax bill. Again, this unsupported assertion is premised on erroneous legal conclusions The Sheridans' house is in Illinois, and so Illinois law determines whether the transfer was fraudulent. Under Illinois law, a creditor (in this case, the United States) may have a fraudulent conveyance set aside. Ill.Rev.Stat.1985 ch. 59, p 4. A conveyance is presumptively fraudulent if (1) it is made for inadequate consideration; (2) there is an existing or anticipated indebtedness against the transferor; and (3) the transferor did not retain sufficient property to pay his indebtedness. See Gendron v. Chicago & North Western Transp. Co., 564 N.E.2d 1207, 1214-15 (Ill.1990); Anderson v. Ferris, 470 N.E.2d 518, 521 (Ill.App.Ct.1984), First Sec. Bank of Glendale Heights v. Bawoll, 458 N.E.2d 193, 197 (Ill.App.Ct.1983).
 
 
 10
 All three elements are satisfied in this case. The district court found that the $2.00 Ms. Sheridan paid for Mr. Sheridan's interest in his house was inadequate consideration. On appeal, the Sheridans point to no evidence suggesting the contrary. (In fact, the record indicates that the house is worth between $70,000 and $100,000.) The Sheridans argue that they jointly agreed to the $2.00 sale price, but that fact does not establish that this consideration was "adequate" for the purposes of the fraudulent conveyance statute. See, e.g., Casey Nat'l Bank v. Roan, 668 N.E.2d 608, 611 (Ill.App.Ct.) (father's conveyance of half interest in 60- and 25-acre tracts of land to children for $10 each deemed inadequate consideration for purposes of fraudulent conveyance statute), appeal denied, 675 N.E.2d 631 (Ill.1996); Effingham State Bank v. Blades, 487 N.E.2d 431, 435 (Ill.App.Ct.1985) (husband's conveyance of land worth $60,000 to wife for $100 deemed inadequate consideration for purposes of fraudulent conveyance statute).
 
 
 11
 Second, the Sheridans do not deny that Mr. Sheridan was indebted to the federal government for his back taxes, and that the government was actively seeking to collect that debt from him when he sold his interest in the house. The Sheridans do argue that there was no lien on their house when Mr. Sheridan conveyed his interest,[1] but that fact is irrelevant to whether the transfer was fraudulent under Illinois law. The only relevant issue is whether Mr. Sheridan was or anticipated being indebted at the time of the conveyance. See Casey Nat'l Bank, 668 N.E.2d at 611 (transfer of real estate when loan was delinquent and bank was pressing debtor to refinance loan held to be transfer while debtor was indebted); Reagan v. Baird, 487 N.E.2d 1028 (Ill.App.Ct.1985) (indebtedness exists at time of conveyance, for purposes of fraudulent conveyance statute, regardless of whether creditor has reduced claim to a judgment or initiated legal action). As we said above, Mr. Sheridan does not deny that he owed back taxes when he sold his interest in his home.
 
 
 12
 Third, the district court found that after he sold his interest in the house, Mr. Sheridan retained insufficient property to satisfy his tax obligations. Again, the Sheridans point to no evidence to the contrary. Accordingly, under Illinois law, Mr. Sheridan's conveyance of his interest in his house to his wife was fraudulent in law, see Gendron, 564 N.E.2d at 1214-15, and the district court properly set it aside. See, e.g., United States v. Denlinger, 982 F.2d 233 (7th Cir.1992), cert. denied, 510 U.S. 859 (1993): Indiana Nat'l Bank v. Gamble, 612 F.Supp. 1272 (N.D.Ill.1984). Thus, the district court properly ordered the tax liens foreclosed and the house sold.
 
 
 13
 Finally, we deem this appeal to be frivolous. Accordingly, we believe that a $2,000 sanction may be warranted. See Cohn v. Commissioner, 101 F.3d 486 (7th Cir.1996) (per curiam). We therefore direct the Sheridans to show cause why they should not be sanctioned for filing this appeal. Fed.R.App.P. 38, Cir.R. 38. They have 14 days to file a response. We strongly caution them that any further opprobrious or insulting language directed at this court, the district court or the government attorneys will not be tolerated.
 
 
 14
 AFFIRMED; ORDER TO SHOW CAUSE ISSUED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary in this case, accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Under 26 U.S.C. §§ 6321-22, a lien arises on all of a taxpayer's property for unpaid taxes when the IRS makes an assessment of liability. So far as the record shows, the IRS did not make an assessment of liability against Mr. Sheridan until July 1985--four months after he sold his interest in his house