In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3034 & 00-3035

THE SOCIETY OF LLOYD'S,

Plaintiff-Appellant,

v.

PATRICK COLLINS,

Defendant-Appellee,

and

Kathleen Callahan,

Appellee.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2651--Harry D. Leinenweber, Judge.

Argued January 26, 2001--Decided March 25, 2002

Before BAUER, MANION, and ROVNER, Circuit
Judges.

ROVNER, Circuit Judge. These appeals
arise from two rulings by the district
court quashing non-wage garnishments
served by The Society of Lloyd's, a
foreign corporation that oversees the
London insurance market, against Patrick
J. Collins and Eugene Callahan, American
members of insurance syndicates that
Lloyd's manages. Lloyd's asserts district
court error but we affirm.

I.   Background

Although Lloyd's oversees the London
insurance market, the insurance is
written by its underwriting members. See
Soc'y of Lloyd's v. Ashenden, 233 F.3d
473 (7th Cir. 2000). Because these
members, also known as "names," do not
have limited liability, their personal
assets are at risk if insured parties
were to obtain a judgment worth more than
the assets of the member that insured
them. In the late 1980s and early 1990s
the Lloyd's-supervised members incurred
aggregate underwriting losses exceeding

$12 billion. Facing financial ruin, Lloyd's created a company in 1996 to reinsure the risks underwritten by its members. Lloyd's financed this reinsurance venture by levying a mandatory assessment against its names. Ninety-five percent of the names took advantage of a discounted rate and voluntarily paid this reinsurance premium. In 1998 Lloyd's obtained money judgments in England against names who refused to pay, including Collins, for approximately $433,000, and Callahan, for approximately $551,000.

Collins and Callahan, however, refused to pay the money judgments. Consequently, Lloyd's initiated proceedings to collect on the judgments by filing them in the district court in Chicago and issuing "citations" pursuant to the Illinois Uniform Foreign Money-Judgments Recognition Act, 735 ILCS 5/12-618-626. The Act allows a judgment holder to depose judgment debtors regarding their assets; to impose a lien on those assets; and to command the debtors to turn over seizable assets to satisfy the judgments. See Soc'y of Lloyd's, 233 F.3d at 475-76; Bank of Aspen v. Fox Cartage, Inc., 533 N.E.2d 1080, 1083 (Ill. 1989). The district court upheld the validity of the judgments against Collins and Callahan; this court affirmed in November 2000, see Soc'y of Lloyd's, 233 F.3d 473.

While the above-described litigation was pending, Lloyd's issued garnishments to execute the judgments against Collins and Callahan. Lloyd's caused a garnishment summons and interrogatories to be served on the Northwestern Mutual Life Insurance Company ("Northwestern"), which answered that it held nine life insurance policies owned by Collins and valued at more than $1 million. Collins then moved to declare the policies exempt from garnishment on the ground that his wife is the intended beneficiary of the policies. Lloyd's responded that it was seeking only those premium payments (totaling approximately $120,000) paid since 1996, when the debt arose. The district court, however, declared that Lloyd's could not garnish Collins's life insurance policies for the value of those premiums because it did not establish that Collins made the premium payments with intent to defraud or to convert nonexempt assets into exempt assets.

Lloyd's also caused a garnishment summons to be served on the First National Bank of LaGrange, where Callahan had a joint checking account with his wife, Kathleen. The bank answered that it held over $12,000 in the account. Kathleen then moved to release the funds from the account. The district court granted her motion, quashed the garnishment, and released the funds. The court concluded that Lloyd's could not garnish funds from the account because they belonged to Kathleen.

## II. Discussion

On appeal Lloyd's argues that the court erred by declaring Collins's life insurance premiums exempt from garnishment and by concluding that the funds in the Callahans' joint checking account really belonged to Kathleen and not her husband, the judgment debtor. We disagree.

### A. Collins

Collins is a retired insurance agent for Northwestern. Between 1966 and 1980 he purchased nine life insurance policies with his wife as the direct beneficiary. Collins became a Lloyd's name in 1988. Lloyd's is attempting to garnish a sum equal to the insurance premiums paid by Collins since 1996 (approximately $30,000 per year). Under Illinois law life insurance policies may be garnished in limited circumstances: (1) if purchased with the intent of converting nonexempt property into exempt property; or (2) if purchased in fraud of creditors. 735 ILCS 5/12-1001. Lloyd's contends that it is entitled to garnish Collins's premium payments under either exception, but it wrongly assumes that the statutory provision applies in the first place. Collins purchased the policies years before his involvement with Lloyd's and therefore could not have purchased the policies to avoid his obligations to Lloyd's. Consequently, the statutory exceptions do not apply and Collins's premium payments are exempt from garnishment under Illinois law.

But even if the statute did apply, Lloyd's would not prevail. With regard to the first exception, Lloyd's has not

demonstrated that Collins intended to convert nonexempt property to exempt property. Collins continued merely to pay the premiums on long-standing policies that predated his involvement with Lloyd's. Collins did not change his behavior after the Lloyd's judgment; instead, he paid the premium to keep the policies in force. Consequently, the district court correctly concluded that he lacked the requisite intent under the Illinois garnishment exemption provision.

Nor did Collins's continued payment of the premiums constitute fraud. Lloyd's acknowledges that there is no evidence of actual fraudulent intent, but nevertheless argues that Collins's premium payments constituted "fraud in law," a doctrine under which fraud may be presumed from circumstances surrounding the transactions. Under Illinois law fraudulent intent may be presumed without regard to actual intent or motives in two instances: (1) where an insolvent debtor pays premiums rather than the debt, see Borin v. John Hancock Mut. Life Ins. Co., 157 N.E.2d 673, 675 (Ill. App. 1959) (emphasis added); or (2) where a debtor makes a voluntary transfer without consideration or for inadequate consideration (particularly between relatives) that hinders or delays the rights of creditors, see Casey Nat'l Bank v. Roan, 668 N.E.2d 608, 611 (Ill. App. 1996); Crawford County State Bank v. Marine Am. Nat'l Bank, 556 N.E.2d 842, 856-57 (Ill. App. 1990); Montgomery Ward & Co. v. Simmons, 261 N.E.2d 555, 556 (Ill. App. 1970).

Lloyd's fails to demonstrate either scenario. Collins is solvent, and he did not transfer property for inadequate con sideration--he and his family received comprehensive life insurance coverage in exchange for the premium payments. Lloyd's would like to extend Illinois precedent to mean that any payment which hinders or delays the rights of creditors amounts to fraud. Such an approach, however, ignores the facts in those cases that gave rise to the implication of fraud, i.e., insolvency, or giving away property for nothing or next to nothing. See Casey, 668 N.E.2d at 611; Crawford County, 556 N.E.2d at 857; Montgomery Ward, 261 N.E.2d at 555-56; Borin, 157 N.E.2d at 675. The factors identified under Illinois law that suggest fraud are

missing here. Lloyd's argues that fraud may be presumed whenever a debtor's movement of assets frustrates a creditor's efforts to collect. But the broad "hindrance and delay" standard advocated by Lloyd's would give creditors unfettered license to challenge a wide range of debtor transactions without regard to the nature of the transactions and the circumstances surrounding them-- an approach inconsistent with the exemption statute's goal of protecting the subsistence of debtors and their families. See Gen. Fin. Corp. v. Rainer, 155 N.E.2d 833, 835 (Ill. App. 1959). Accordingly, we agree with the district court's decision to declare the policies exempt from garnishment.

B.  Callahan

Lloyd's garnishment action against Callahan is a closer call. After Lloyd's caused the garnishment summons to be served, Callahan's bank answered that it held over $12,000 in the joint checking account that he held with Kathleen. Because the money was in a joint account, Lloyd's established a prima facie case that the money in the account belonged to the debtor.  See Leaf v. McGowan, 141 N.E.2d 67, 71 (Ill. App. 1957). As a result, the burden is on Kathleen to prove what portion of the account belonged to her. See id. She met that burden by demonstrating that all of the money in the account came from rent payments from property she owned with her son. Lloyd's argues that it can recover because Eugene had use of the funds in the account. Indeed, had Eugene used the funds for his own personal debts, Lloyd's might be entitled to the money. But the evidence indicates that the funds were used either by Kathleen herself ($9,000 used to pay taxes and redecorate their home), or by Eugene to pay joint bills. The strongest evidence in Lloyd's favor is that Eugene paid an American Express bill with a check written on that account to pay for personal purchases. But Kathleen was also on the credit card account and therefore jointly obligated to pay that bill. As a result, we cannot attribute that payment to Eugene exclusively. And it matters not that Eugene benefitted from payment of the taxes, bills, and household expenses--the issue is whether the source and use of

the funds support the district court's finding that they belonged to Kathleen. Because the record supports the court's finding that the funds belonged to Kathleen, we conclude that the court properly granted her motion to release the funds.

AFFIRMED.